The Honorable

1

2

3

4

5

6

7                           UNITED STATES DISTRICT COURT
8                    WESTERN DISTRICT OF WASHINGTON AT SEATTLE

9   La Conner School District, on behalf of
    themselves and other similarly situated school
10  districts,                                          No.

11                                   Plaintiff,
                                                        CLASS ACTION COMPLAINT
12          v.                                          JURY TRIAL DEMANDED

13  Juul Labs, Inc., Altria Group, Inc., Altria Client
14  Services, Altria Group Distribution Company,
    Nu Mark LLC, and Nu Mark Innovations, Ltd.,
15
                                     Defendants.
16

17

18

19

20

21

22

23

24

25

26

CLASS ACTION COMPLAINT
JURY TRIAL DEMANDED
()

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................ 1

II.     JURISDICTION AND VENUE ................................................................................... 1

III.    PARTIES ..................................................................................................................... 2

IV.     ALLEGATIONS OF FACT ......................................................................................... 3

        A.      The Youth Vaping Epidemic and the Rise of JUUL ............................................ 3

        B.      Big Tobacco and E-Cigarettes ......................................................................... 9

        C.      JUUL and Altria Join Forces to Protect JUUL's Market Share ........................ 17

        D.      The Secret to JUUL's Success: Hooking Kids ................................................. 25

        E.      The Cost of JUUL's Success .......................................................................... 36

        F.      JUUL's Remedial Measures ........................................................................... 42

        G.      JUUL and Schools ........................................................................................ 43

        H.      Impact on La Conner School District ............................................................. 48

V.      CLASS ACTION ALLEGATIONS ........................................................................... 51

        A.      Class Definitions .......................................................................................... 51

VI.     CLASS CERTIFICATION REQUIREMENTS: FEDERAL RULE OF
        CIVIL PROCEDURE 23 ........................................................................................... 52

VII.    CAUSES OF ACTION .............................................................................................. 55

        COUNT One — VIOLATIONS OF THE WASHINGTON PUBLIC
        NUSIANCE LAW, RCW 7.48.010 *ET SEQ.* ...................................................... 55

        COUNT Two — VIOLATIONS OF THE RACKETEER INFLUENCED
        AND CORRUPT ORGANIZATIONS ACT ("RICO"), 18 U.S.C.
        § 1961, *et seq.* ..................................................................................................... 60

        A.      Description of the Defendants' Enterprises ...................................................... 61

        B.      The Enterprises Sought to Fraudulently Increase Defendants'
        Profits and Revenues ..................................................................................... 63

        C.      Predicate Acts:  Mail and Wire Fraud ............................................................ 65

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1

D.    Plaintiff Has Been Damaged by Defendants' RICO Violations .......................... 71

2

PRAYER FOR RELIEF ..................................................................................................... 72

3

JURY TRIAL DEMANDED ............................................................................................... 73

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

## I.    INTRODUCTION

1.    Plaintiff La Conner School District brings this class action individually and on behalf of all similar situated school districts Nationwide and in Washington State (the "Classes") who have been injuriously affected by Defendants JUUL Labs, Inc. ("JUUL"), Altria Group, Inc., Altria Client Services, Altria Group Distribution Company, and Nu Mark, LLC (collectively "Altria Defendants") and their conduct in marketing of e-cigarettes to minors. Plaintiff brings this action for injunctive relief, abatement, and damages arising out of the injuries to its property, students, and employees caused by Defendants' wrongful conduct.

2.    Plaintiff reasonably fears that, as described below, Defendants' marketing strategy, advertising, and product design targets minors, especially teenagers, and will increase the likelihood that minors, like the students in La Conner School District, will begin using e-cigarettes and become addicted to Defendants' e-cigarette products and this will cause further harm to plaintiff and other similarly situated.

## II.    JURISDICTION AND VENUE

3.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because: (i) there are 100 or more class members; (ii) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; and (iii) at least one plaintiff and defendant are citizens of different states. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

4.    The Court has personal jurisdiction over Defendants because they do business in the Western District of Washington and have sufficient minimum contacts with this District. Defendants intentionally avail themselves of the markets in this State through the promotion,

CLASS ACTION COMPLAINT
JURY TRIAL DEMANDED
() - 1

marketing, and sale of the products at issue in this lawsuit to render the exercise of jurisdiction by this Court permissible under Washington law and the U.S. Constitution.

5.      Venue is proper in the Western District of Washington pursuant to 28 U.S.C. § 1391 (b)(2) and (3) because a substantial part of the events or omissions giving rise to the claims at issue in this Complaint arose in this District and Defendants are subject to the Court's personal jurisdiction with respect to this action.

### III.    PARTIES

6.      Plaintiff La Conner School District ("the District") is a school district located in Skagit County, Washington. La Conner School District employs over 100 people and serves over 600 students in preschool through twelfth grade. La Conner School District has a preschool, an elementary school, a middle school, and a high school.

7.      Defendant JUUL is a Delaware corporation, having its principal place of business in San Francisco, California. JUUL originally operated under the name PAX Labs, Inc. In 2017, it was renamed JUUL Labs, Inc. JUUL manufactures, designs, sells, markets, promotes and distributes JUUL e-cigarettes, JUULpods and accessories.

8.      Defendant Altria Group, Inc. is a Virginia corporation, having its principal place of business in Richmond, Virginia. Altria is one of the world's largest producers and marketers of tobacco products. On December 20, 2018, Altria purchased a 35% stake in JUUL.

9.      Defendant Altria Client Services Inc. is a New York corporation and wholly owned subsidiary of Altria Group, Inc. with its principal place of business in Henrico County, Virginia. Altria Client Services Inc. provides Altria Group, Inc. and its companies with services in many areas including digital marketing, packaging design & innovation, product development, and safety, health, and environmental affairs. On September 25, 2019, the former senior vice

CLASS ACTION COMPLAINT
JURY TRIAL DEMANDED
() - 2

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

president and chief growth officer of Altria Client Services Inc., K.C. Crosthwaite, became the new chief executive of JUUL.

10.     Defendant Altria Group Distribution Company is a Virginia corporation and wholly owned subsidiary of Altria Group, Inc. with its principal place of business in Henrico County, Virginia. Altria Group Distribution Company provides sales, distribution and consumer engagement services to Altria's tobacco companies.

11.     Defendant Nu Mark LLC is a Virginia corporation and wholly owned subsidiary of Altria Group, Inc., with its principal place of business in Richmond, Virginia. Nu Mark LLC was engaged in the manufacture and sale of Altria's electronic vapor products. Shortly before Altria purchased a 35% stake in JUUL in December 2018, Altria Group, Inc. announced that Nu Mark would be discontinuing the production and sale of all e-vapor products.

12.     Defendant Nu Mark Innovations, Ltd. is a subsidiary of Nu Mark LLC located in Beit Shemesh, Israel. Nu Mark Innovations, Ltd. provides digital marketing and customer care services for Nu Mark LLC and Altria's e-vapor brands, as well as product and technology development services.

## IV.     ALLEGATIONS OF FACT

### A.     The Youth Vaping Epidemic and the Rise of JUUL

13.     One of the great public health success stories over the past decade has been a reduction in youth tobacco use and in nicotine addiction. Youth smoking rates plummeted from 28% in 2000 to 7.6% in 2017.[1] This success has been the result of years of litigation and strict

---

[1] Meredith Berkman, *Testimony of Meredith Berkman, Parents Against Vaping E-cigarettes*, U.S. House Committee on Oversight & Reform (July 24, 2019), https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2019.07.24%20Berkman-PAVe%20Testimony.pdf.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

regulation. It is also due to a public health message that Big Tobacco can no longer dispute or contradict, and which is simple, stark, and effective: smoking kills.

14.     This incredible progress towards eliminating youth tobacco use has now largely been reversed due to e-cigarettes and vaping. Between 2011 and 2015, e-cigarette use among high school and middle school students increased 900%.[2] Between 2017 and 2018, e-cigarette use increased 78% among high school students, from 11.7% of high school students in 2017 to 20.8% of high schoolers in 2018.[3] Among middle school students, e-cigarette use increased 48% between 2017 and 2018.[4] In 2018, 4.9 million middle and high school students used tobacco products, with 3.6 million of those students using e-cigarettes.[5] Between 2017 and 2018, the number of youth e-cigarette users increased by 1.5 million.[6]

15.     According to the Centers for Disease Control and Prevention ("CDC") Director Robert Redfield, "The skyrocketing growth of young people's e-cigarette use over the past year threatens to erase progress made in reducing tobacco use. It's putting a new generation at risk for nicotine addiction."[7] The U.S. Food and Drug Administration ("FDA") Commissioner Scott Gottlieb described the above statistics as "astonishing" and both the FDA and the U.S. Surgeon General have appropriately characterized youth vaping as an "epidemic."[8] The National Institute

---

[2] Jerome Adams, *Surgeon General's Advisory on E-cigarette Use Among Youth*, Ctrs. for Disease Control & Prevention (Dec. 2018), https://e-cigarettes.surgeongeneral.gov/documents/surgeon-generals-advisory-on-e-cigarette-use-among-youth-2018.pdf.
[3] *Id.*
[4] *2018 NYTS Data: A startling rise in youth e-cigarette use*, U.S. Food & Drug Admin. (Feb. 2, 2019), https://www.fda.gov/tobacco-products/youth-and-tobacco/2018-nyts-data-startling-rise-youth-e-cigarette-use.
[5] *Id*.
[6] *Id*.
[7] *Texas governor signs law increasing the age to buy tobacco products to 21*, CNN (June 8, 2019), https://m.cnn.com/en/article/h_b4cf0b92fd821251a4ae48df9b717145.
[8] Angelica LaVito, *FDA chief Gottlieb threatens to pull e-cigarettes off market if 'astonishing' surge in teen use doesn't slow*, CNBC (Nov. 16, 2018), https://www.cnbc.com/2018/11/16/fda-chief-gottlieb-threatens-to-pull-e-cigarettes-off-market.html; Jayne O'Donnell, *FDA declares youth vaping an epidemic, announces investigation,*

CLASS ACTION COMPLAINT
JURY TRIAL DEMANDED
() - 4

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

on Drug Abuse found that the 2018 spike in nicotine vaping was the largest for any substance recorded in 44 years, and Alex Azar, Secretary of the U.S. Department of Health and Human Services declared that "[w]e have never seen use of any substance by America's young people rise as rapidly as e-cigarette use [is rising]."[9]

16.     A major cause of this epidemic is JUUL Labs, Inc., the maker of the JUUL e-cigarette. JUUL entered the e-cigarette market in 2015 and now controls over 70% of it.[10] Over a million JUUL e-cigarettes were sold between 2015 and 2017.[11] JUULs are available at over 12,000 retail stores and online.[12] In 2017, JUUL generated over $224 million in retail sales, a 621% year-over-year increase.[13] By June 2018, sales had skyrocketed another 783%, reaching $942.6 million.[14] The e-cigarette category as a whole grew 97% to $1.96 billion in the same period, largely based on JUUL's market success.[15] JUUL's dominance of the e-cigarette market has been so rapid, and so complete, that the act of vaping is now referred to as "JUULing."

17.     Juul's market dominance has attracted the attention and alarm of government regulators, including the FDA, the U.S. Surgeon General, and the CDC. On February 24, 2018,

*new enforcement*, USA Today (Sept. 12, 2018), https://www.usatoday.com/story/news/politics/2018/09/12/fda-scott-gottlieb-youth-vaping-e-cigarettes-epidemic-enforcement/1266923002/.

[9] Jan Hoffman, *Study Shows Big Rise in Teen Vaping This Year*, N.Y. Times (Dec. 17, 2018), https://www.nytimes.com/2018/12/17/health/ecigarettes-teens-nicotine-.html; Rajiv Bahl, *Teen Use of Flavored Tobacco was Down, But E-Cigarettes Are Bringing It Back Up*, Healthline (Jan. 9, 2019), https://www.healthline.com/health-news/flavored-tobacco-use-rising-again-among-teens#An-unhealthy.habit.

[10] Richard Craver, *Juul ends 2018 with 76 percent market share*, Winston-Salem J. (Jan. 8, 2019), https://www.journalnow.com/business/juul-ends-with-percent-market-share/article_6f50f427-19ec-50be-8b0c-d3df18d08759.html.

[11] Melia Robinson, *How a startup behind the 'iPhone of vaporizers' reinvented the e-cigarette and generated $224 million in sales in a year*, Bus. Insider (Nov. 21, 2017), https://www.businessinsider.com/juul-e-cigarette-one-million-units-sold-2017-11/.

[12] *Id.*

[13] *Id.*

[14] Angelica LaVito, *Popular e-cigarette Juul's sales have surged almost 800 percent over the past year*, CNBC Health & Sci. (Sept. 11, 2018), https://www.cnbc.com/2018/07/02/juul-e-cigarette-sales-have-surged-over-the-past-year.html.

[15] *Id.*

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

the FDA sent a letter to JUUL expressing concern about the popularity of its products among youth and demanding that JUUL produce documents regarding its marketing practices.[16] On September 12, 2018, the FDA sent letters to JUUL and other e-cigarette manufacturers putting them on notice that their products were being used by youth at disturbing rates.[17] In October 2018, the FDA raided JUUL's headquarters and seized more than a thousand documents relating to the Company's sales and marketing practices.[18] As of October 2019, the FDA, the Federal Trade Commission, multiple state attorney generals and the U.S. House of Representatives Committee on Oversight and Reform have all commenced investigations into JUUL's role in the youth vaping epidemic and whether JUUL's marketing practices purposefully targeted youth.

18.     The decline of cigarette use and the rise of JUUL is far from coincidence. The Company was founded by Adam Bowen and James Monsees, both product designers by education and experience. Bowen and Monsees met in Stanford University's famed graduate product design program, where the first iteration of JUUL was their final project.[19] Monsees has described the cigarette as "the most successful consumer product of all time . . . an amazing product."[20]

19.     Years of litigation, regulation, and education by public health advocates, the medical community, and elected officials against Big Tobacco had severely tarnished the

---

[16] Matthew Holman, *Letter from Director of Office of Science, Center for Tobacco Products, to Zaid Rouag, at JUUL Labs, Inc.*, U.S. Food & Drug Admin. (Apr. 14, 2018), https://www.fda.gov/media/112339/download.

[17] *Letter From US FDA to Kevin Burns*, U.S. Food & Drug Admin. (Sept. 12, 2018), https://www.fda.gov/media/119669/download.

[18] Laurie McGinley, *FDA seizes Juul e-cigarette documents in surprise inspection of headquarters*, Wash. Post (Oct. 2, 2018), https://www.washingtonpost.com/health/2018/10/02/fda-seizes-juul-e-cigarette-documents-surprise-inspection-headquarters/.

[19] Julia Belluz, *The Vape Company Juul Said It Doesn't Target Teens. Its Early Ads Tell a Different Story*, Vox (Jan. 25, 2019), https://www.vox.com/2019/1/25/18194953/vape-juul-e-cigarette-marketing.

[20] Gabriel Montoya, *Pax Labs: Origins with James Monsees*, Social Underground, https://socialunderground.com/2015/01/pax-ploom-origins-future-james-monsees/ (last visited Sept. 7, 2019).

CLASS ACTION COMPLAINT
JURY TRIAL DEMANDED
() - 6

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

popularity of cigarettes. Monsees and Bowen thus set out to "deliver[] solutions that refresh the magic and luxury of the tobacco category."[21] Monsees saw "a huge opportunity for products that speak directly to those consumers who aren't perfectly aligned with traditional tobacco products."[22] Seeking to recreate the lost "ritual and elegance that smoking once exemplified," Monsees set out to re-design the cigarette "to meet the needs of people who want to enjoy tobacco but don't self-identify with—or don't necessarily want to be associated with—cigarettes."[23] In essence, the objective of JUUL was to build a newer, more attractive cigarette. One that could addict a new generation of smokers. By design, a cornerstone of the product's commercial success is its addictive nature.

20.     JUUL is, in many ways, the paradigmatic start-up. It has all the markings of Silicon Valley success: staggering profit margins, meteoric growth, and status as a cultural phenomenon. The Silicon Valley-savvy company used the framework and ideology of startup culture to catapult itself to success by every metric in the startup industry. In 2018, JUUL's gross profit margins were 70%[24] and it represented 76.1% of the national e-cigarette market.[25] It shattered previous records for reaching decacorn status, reaching valuation of over $10 billion in

---

[21] *Onboardly Interview with Ploom Cofounder and CEO James Monsees*, Pax.com (Apr. 30, 2014), https://www.pax.com/blogs/press/onboardly.

[22] *Id.*

[23] *Id.*

[24] Dan Primack, *Scoop: The Numbers Behind Juul's Investor Appeal*, Axios (July 2, 2018), https://www.axios.com/numbers-juul-investor-appeal-vaping-22c0a2f9-beb1-4a48-acee-5da64e3e2f82.html.

[25] Robert K. Jackler et al., *JUUL Advertising Over Its First Three Years on the Market 2*, Stanford Res. into the Impact of Tobacco Advert. (2019) ("Juul Advertising"), http://tobacco.stanford.edu/tobacco_main/publications/JUUL_Marketing_Stanford.pdf.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

a matter of months, or four times faster than Facebook.[26] This all came just three years after its product launch.

21.     JUUL's staggering commercial success didn't come from a blank slate. Under the Master Settlement Agreement between Big Tobacco and the States, the public has access to hundreds of thousands of Big Tobacco's internal documents. In creating JUUL, Monsees and Bowen carefully studied the marketing strategies, advertisements, and product design of Big Tobacco. As Monsees candidly acknowledged, the internal tobacco documents "became a very intriguing space for us to investigate because we had so much information that you wouldn't normally be able to get in most industries. And we were able to catch-up, right, to a huge, huge industry in no time. And then we started building prototypes."[27]

22.     Some of the Big Tobacco records that Monsees and Bowen reviewed document how to manipulate nicotine pH to maximize nicotine delivery in a vapor while minimizing the "throat hit" that may potentially deter new smokers. Other records relate to tobacco industry market strategies and advertisements designed to lure non-smoking youth. Monsees and Bowen were able to take advantage of an extensive online tobacco advertising research database maintained by the Stanford Research into the Impact of Tobacco Advertising ("SRITA"), an inter-disciplinary research group devoted to researching the promotional activities of the tobacco industry. SRITA's database contains approximately 50,000 original tobacco advertisements. According to Monsees, JUUL's advertising was informed by traditional tobacco advertisements, and SRITA in particular had been very useful to JUUL.[28]

---

[26] Zack Guzman, *Juul Surpasses Facebook As Fastest Startup to Reach Decacorn Status*, Yahoo! Fin. (Oct. 9, 2019), https://finance.yahoo.com/news/juul-surpasses-facebook-fastest-startup-reach-decacorn-status-153728892.html.

[27] Montoya, *supra* note 20.

[28] Jackler, Juul Advertising at p. 27.

CLASS ACTION COMPLAINT
JURY TRIAL DEMANDED
() - 8

23.     Put simply, the marketing and product design of the JUUL e-cigarette, and its incredible commercial success, are based upon tactics and strategies developed by Big Tobacco. As set forth below, while Big Tobacco was prohibited from employing these tactics and strategies to market traditional cigarettes by virtue of the Master Settlement Agreement and subsequent regulations, nothing prevented JUUL from doing so.

**B.      Big Tobacco and E-Cigarettes**

24.     While JUUL revolutionized and dominated the e-cigarette market, it did not create the first one. Prior to JUUL, Big Tobacco—including Altria—was also heavily involved in the manufacture and promotion of e-cigarettes. Altria has been one of the biggest losers in the fight against smoking. Altria estimates that the cigarette industry declined by -4% in 2017 and by -4.5% in 2018. For 2019 through 2023, Altria estimated for the average annual U.S. cigarette industry volume declines is -4% to -5%.[29] Altria later revised this estimate in the second quarter of 2019 from 4-5% to 4-6%, in light of efforts to increase the legal age for cigarette smoking to 21.[30]

25.     In the face of these numbers, Altria turned to e-cigarettes, along with other "non-combustible products," to "enhance" its business platform.[31] Altria boasted to shareholders that it "aspire[d] to be the U.S. leader in authorized, non-combustible, reduced-risk products."[32]

---

[29] *Presentation for Altria's Fourth-Quarter 2018 Earnings Conference Call*, Altria (Jan. 31, 2019), http://investor.altria.com/Cache/1001247877.PDF?O=PDF&T=&Y=&D=&FID=1001247877&iid=4087349.

[30] *Altria Shares Slide As Cigarette Sales Continue to Decline*, Tobacco Business (July 31, 2019), https://tobaccobusiness.com/altria-shares-slide-as-cigarette-sales-continue-to-decline/.

[31] *Presentation for Altria's Second-Quarter 2019 Earning Conference Call*, Altria (July 30, 2019), http://investor.altria.com/Cache/1001255076.PDF?O=PDF&T=&Y=&D=&FID=1001255076&iid=4087349.

[32] *Presentation for Annual Meeting of Shareholders*, Altria (May 17, 2018), http://investor.altria.com/Cache/1500113050.PDF?O=PDF&T=&Y=&D=&FID=1500113050&iid=4087349.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

26.    Altria entered the e-cigarette market with a cigarette-lookalike, or "cigalike," style of e-cigarette, sold under the brand MarkTen. Following a phased roll-out of MarkTen in Indiana and Arizona in late 2013, Altria launched the MarkTen nationwide in 2014 with an aggressive marketing campaign, eclipsing the advertising expenditures for Imperial Tobacco's e-vapor product, blu.[33]



27.    E-cigarette advertising spending for 2014 totaled $88.1 million, a 52 percent increase from 2013.[34] Of that $88.1 million spent in 2014, nearly 40% of that was Altria's MarkTen campaign, at $35 million.[35]

---

[33] Cantrell, Jennifer & Emelle, Brittany & Ganz, Ollie & Hair, Elizabeth & Vallone, Donna. (2015). *Rapid increase in e-cigarette advertising spending as Altria's MarkTen enters the marketplace*. Tobacco Control. 25. 10.1136/tobaccocontrol-2015-052532.

[34] *Id.*

[35] *Id.*

CLASS ACTION COMPLAINT
JURY TRIAL DEMANDED
() - 10

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

28.    Altria's MarkTen advertising tag line, "Let It Glow," was criticized by public health advocates for playing off Disney's popular children's movie "Frozen" and its hit song "Let it Go."[36]



29.    Even the then-president of R.J. Reynolds Vapor Company, Stephanie Cordisco, criticized Altria for irresponsible marketing, calling this tag line "terrible" and saying that the companies "running the most irresponsible campaigns are the ones who know better."[37] At the

---

[36] Matt Richtel, *A Bolder Effort by Big Tobacco on E-Cigarettes*, NY TIMES (June 17, 2014), https://www.nytimes.com/2014/06/17/business/a-bolder-effort-by-big-tobacco-on-e-cigarettes.html.
[37] *Id.*

CLASS ACTION COMPLAINT
JURY TRIAL DEMANDED
() - 11

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

time, the president of the Campaign for Tobacco-Free Kids said that companies like Altria were using "exactly the same themes we saw work with kids in the U.S. for decades with cigarettes."[38]



30.     Although free samples of tobacco products are prohibited under the terms of the Tobacco MSA as well as FDA regulations issued in 2010, Altria took advantage of the grey area in the regulation of e-cigarettes and distributed coupons for free sample nicotine cartridges as part of its MarkTen launch. (The FDA has since issued finalized guidance clarifying the scope of the ban on distributing free samples or coupons for e-cigarettes or components.)

---

[38] *Id.*

CLASS ACTION COMPLAINT
JURY TRIAL DEMANDED
() - 12



31. Altria also took full advantage of its distribution network, reaching 60,000 stores in a month.[39] In Arizona, for example, Altria's distribution network allowed MarkTen to achieve a 48% e-cigarette market share in just seven weeks after launch, according to then-CEO Marty

---

[39] Melissa Kress, *MarkTen National Rollout Hits 60,000 Stores,* Convenience Store News (July 22, 2014), https://csnews.com/markten-national-rollout-hits-60000-stores.

CLASS ACTION COMPLAINT
JURY TRIAL DEMANDED
() - 13

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Barrington's statements on an earnings call.[40] Altria was clear in its intent to dominate the e-cigarette market as it has the traditional cigarette one: "We are the market leader today and we will continue to be," Barrington told investors.[41]

32.    Altria began acquiring small companies in the vaping industry, starting in 2014 with Green Smoke, Inc., whose e-cigarettes were also the "cigalike" style.[42] In 2017, Altria acquired a vape product called Cync, from Vape Forward. Cync is a small vapor device that uses prefilled pods, similar to JUUL. It also made a minority investment in Avail Vapor, one of the largest vape store chains in the U.S., which also produces and sells its own branded e-liquids for so-called open-system devices, which are refillable.[43]

33.    In February 2018, Altria announced that it would enter the closed-tank market with the MarkTen Elite: "a pod-based product with a premium, sleek battery design" and having the "convenience of prefilled, magnetic click pods." At an analyst conference in February 2018, former Altria chief Marty Barrington boasted that the Elite's pods held more than twice as much liquid as JUUL's.[44]

---

[40] Id.

[41] Id.

[42] Mike Esterl, *Altria To Launch MarkTen E-Cigarette Nationally,* Wall Street Journal (Feb. 19, 2014), https://www.wsj.com/articles/altria-to-launch-markten-e-cigarette-nationally-1392832378.

[43] Timothy S. Donahue, *At the Forefront*, Tobacco Reporter (Dec. 1, 2017), https://www.tobaccoreporter.com/2017/12/at-the-forefront/.

[44] Marty Barrington, *Remarks by Marty Barrington, Altria Group, Inc.'s (Altria) Chairman, Chief Executive Officer (CEO) and President, and other members of Altria's senior management team,* US SEC (Feb.21, 2018), https://www.sec.gov/Archives/edgar/data/764180/000076418018000020/exhibit992-2018cagnyremarks.htm.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384



34.    Altria quickly followed with another pod-based product, the Apex by MarkTen.



35.    Because e-cigarettes are subject to more relaxed regulation than cigarettes, Altria was able to market its products in ways it could not have done for traditional tobacco products. Altria marketed its e-cigarettes in flavors that would appeal to youth: Strawberry Brulee, Apple Cider, Hazelnut Cream, Spiced Fruit, Piña Colada, Glacier Mint, and Mardi Gras (apparently a mixed berry flavor). Most of these flavors were marketed with the Elite and Apex products, Altria's "pod" e-cigarettes.

36.    Altria's push to gain the youth market gained the attention of the FDA. On September 12, 2018, the FDA sent a warning letter to Altria, requesting that Altria respond with a "detailed plan" to address and mitigate the widespread use of its e-cigarette products by minors.[45] Due to the "epidemic rate of increase in youth use" of e-cigarettes, the FDA had recently conducted an "enforcement blitz" of retailers nationwide and confirmed that Altria's

---

[45] Scott Gottlieb, *Letter to Altria Client Services,* U.S. Food and Drug Admin. (Sep. 12, 2018), https://www.fda.gov/media/119666/download.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

MarkTen products were being sold to minors. The FDA did not mince words, telling Altria that "[t]his is unacceptable, both legally and as a matter of public health." The FDA warned Altria that it has a responsibility to ensure minors are not getting access to its products and that it was "crucial" that manufacturers like Altria take steps to prevent youth from using its products. First and foremost, the FDA asked Altria to "take prompt action to address the rate of youth use of MarkTen products." The FDA suggested that Altria could revise its current marketing practices, eliminate online sales, and remove flavored products from the market. The FDA's expectation and motivation was clear: "steps must be taken to protect the nation's young people."

37.      On October 25, 2018, Altria responded to the FDA, claiming to have "serious concerns" about youth access to e-vapor products.[46] It admitted that the use of e-cigarettes by youth had risen to "epidemic levels." In response, Altria agreed to remove its pod-based e-cigarettes from the market and stop selling any flavored traditional e-cigarettes other than tobacco, menthol, and mint. It acknowledged that "[b]ased on publicly-available information from FDA and others, we believe pod-based products significantly contribute to the rise in youth use of e-vapor products. We don't believe our products are the issue, but we don't want to risk contributing to the problem." Altria's letter went on to disclaim a numerous of practices that it associated with marketing to youth□strategies that were key components of JUUL's marketing strategy. Altria specifically identified the use of flavors that go beyond traditional tobacco flavors, digitally advertising on websites with a large percentage of youth visitors, using social media to promote the brand, allowing online purchases and promotional sign-ups without age verification, advertising e-cigarettes on billboards, advertising with models who appear to be

---

[46] Howard A. Willard, *Letter to Scott Gottlieb, Commissioner,* Altria (Oct. 25, 2018), http://www.altria.com/About-Altria/Federal-Regulation-of-Tobacco/Regulatory-Filing/FDAFilings/Altria-Response-to-FDA-E-vapor-October-25-2018.pdf.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

under 25 years old, distributing branded merchandise, and paying celebrities or other third parties to market or use a particular brand's e-cigarette. Altria also claimed to support "banning vaping in schools" in order to reduce "social access." Altria ended the letter by committing to "reverse the current use trend among youth."

38.    Less than two months later, Altria changed its tune. On December 20, 2018, Altria announced that it would be making a $12.8 billion dollar investment in JUUL, the biggest equity investment in United States history.[47] The deal gave Altria a 35% stake in JUUL.

## C.    JUUL and Altria Join Forces to Protect JUUL's Market Share

39.    By the fall of 2018, JUUL was under intense scrutiny.  A group of eleven United States senators wrote JUUL's CEO, Kevin Burns, a letter in April 2018, declaring that the JUUL device and JUULpods "are undermining our nation's efforts to reduce tobacco use among youth and putting an entire new generation of children at risk of nicotine addiction and other health consequences."[48]  Less than a week later, then FDA Commissioner Gottlieb announced a crackdown on retailers to limit youth access to e-cigarettes and enforcement actions against JUUL in particular.[49] At the same time, the FDA sent JUUL a request for documents relating to marketing, product design, and public health impact.[50] In July 2018, Massachusetts Attorney General Maura Healey announced an investigation into JUUL regarding marketing and sale to

---

[47] Cromwell Schubarth, *Vaping Unicorn Juul Opens Lab in Mountain View Amid Furor in S.F.*, Silicon Valley Bus. J. (Feb. 5, 2019), https://www.bizjournals.com/sanjose/news/2019/02/05/juul-opens-lab-in-mountain-view.html.

[48] Richard Durbin et al., *Letter from 11 U.S. Senators, to Kevin Burns, CEO of JUUL Labs, Inc.*, United States Senate (April 18, 2018), https://www.durbin.senate.gov/imo/media/doc/JUUL%20Letter%20-%20S%20SIGNED.pdf.

[49] Scott Gottlieb, Statement from FDA Commissioner Scott Gottlieb, M.D., on new enforcement actions and a Youth Tobacco Prevention Plan to stop youth use of, and access to, JUUL and other e-cigarettes (April 23, 2018), https://www.fda.gov/news-events/press-announcements/statement-fda-commissioner-scott-gottlieb-md-new-enforcement-actions-and-youth-tobacco-prevention?utm_campaign=04242018_Statement_Youth%20Tobacco%20Prevention&utm_medium=email&utm_source=Eloqua.

[50] *Id.*

CLASS ACTION COMPLAINT
JURY TRIAL DEMANDED
() - 17

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

minors.[51]  In September 2018, FDA Commissioner Gottlied called youth vaping an "epidemic" and sent letters to JUUL, Altria, and other e-cigarette manufacturers demanding a plan to reduce youth use.[52]  Then, in October 2018, as alleged above, the FDA raided JUUL's headquarters and seized more than a thousand documents relating to JUUL's sales and marketing practices.[53]

40.     On November 13, 2018, JUUL responded with an "Action Plan," declaring its intent to stop selling certain flavors in brick-and-mortar stores, restrict purchases of those flavors on the JUUL website to adults age 21 and over, and shut down its social media accounts.[54]

41.     As the pressure on JUUL intensified, Altria stepped in to assist. Despite the clear criticism of JUUL's conduct in its October 25th letter to the FDA, Altria announced its $12.8 billion investment in JUUL on December 20, 2018.[55] Altria characterized its investment as one intended to "accelerate harm reduction and drive growth."[56] In an investor presentation in 2019, Altria described JUUL as having a "unique and compelling product" and included the following graphic:[57]

---

[51] Press Release, Office of Attorney General Maura Healey, AG Healey Announces Investigation into JUUL, Other Online E-Cigarette Retailers Over Marketing and Sale to Minors (July 24, 2018), https://www.mass.gov/news/ag-healey-announces-investigation-into-juul-other-online-e-cigarette-retailers-over-marketing.

[52] *See* https://www.fda.gov/tobacco-products/rules-regulations-and-guidance/ctp-letters-industry#youth-access

[53] *See Letter From US FDA to Kevin Burns*, *supra* note 19.

[54] https://newsroom.juul.com/juul-labs-action-plan/

[55] https://www.businesswire.com/news/home/20181220005318/en/Altria-12.8-Billion-Minority-Investment-JUUL-Accelerate

[56] *Id.*

[57] Altria Group, Inc. 2019 CAGNY Investor Presentation, Available at http://investor.altria.com/Cache/1500117496.PDF?O=PDF&T=&Y=&D=&FID=1500117496&iid=4087349

CLASS ACTION COMPLAINT
JURY TRIAL DEMANDED
() - 18

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384



42.    But as the president of the Campaign for Tobacco-Free Kids observed upon announcement of the deal, "Altria has no interest in seriously reducing the number of people who smoke cigarettes."[58]

43.    Altria would not have made such an investment if it did not intend to grow JUUL's already enormous market even more. In fact, Altria said as much when announcing its investment, explaining that its investment in JUUL "enhances future growth prospects" and committing to applying "its logistics and distribution experience to help JUUL expand its reach and efficiency."[59] Since the deal was inked in December 2018, Altria's actions have clearly helped JUUL maintain, if not expand, its market share—a market share that, based on Altria's own October 25, 2018 letter to the FDA, it believes was gained by employing marketing and advertising practices that contributed to youth vaping. Altria's Second Quarter 2019 Earnings Call reported that JUUL continued to grow in the first half of 2019, from a 33% category share

---

[58] https://www.nytimes.com/2018/12/20/health/juul-reaches-deal-with-tobacco-giant-altria.html

[59] *Altria Makes $12.8 Billion Minority Investment in JUUL to Accelerate Harm Reduction and Drive Growth,* BusinessWire (Dec. 20, 2018), https://www.businesswire.com/news/home/20181220005318/en/Altria-12.8-Billion-Minority-Investment-JUUL-Accelerate.

CLASS ACTION COMPLAINT
JURY TRIAL DEMANDED
() - 19

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

in 2018 to 48% by the second quarter 2019. JUUL's expected revenue for 2019 is $3.4 billion, nearly triple what it was in 2018.[60]

44.     From JUUL's beginnings, Altria had "followed Juul's journey rather closely."[61] Altria Chairman and CEO Howard Willard said that, for years, his company "watched Juul carefully to see if it had staying power."[62] Altria decided it did. As Willard explained: "During 2018, we concluded that JUUL had not only become the retail share leader in the U.S. e-vapor category, but that no other brand was close to it in share or future growth potential."[63] This was enough for Altria, one of the world's largest producers and marketers of tobacco products, to call JUUL's alleged smoking cessation device a "terrific product" and take a 35% stake in the Company with its $12.8 billion investment.[64] With this investment, Altria now owns both the number one youth initiation cigarette in the United States (the Marlboro cigarette) and the number one youth initiation e-cigarette in the United States, JUUL.

45.     Notwithstanding Altria's statements to the FDA just two months previously about its concerns that JUUL was marketing and advertising its products in a way that contributed to the youth vaping epidemic, Willard stated that the deal would allow Altria to "work[] with JUUL to accelerate its mission."[65] Altria committed to applying "its logistics and distribution

---

[60] Olivia Zaleski & Ellen Huet, *Juul Expects Skyrocketing Sales of $3.4 Billion, Despite Flavored Vape Restrictions*, Bloomberg (Feb. 22, 2019), https://www.bloomberg.com/news/articles/2019-02-22/juul-expects-skyrocketing-sales-of-3-4-billion-despite-flavored-vape-ban.

[61] Altria Group, Inc., Current Report (Form 8-K), Ex. 99.1 (Feb. 20, 2019), https://www.sec.gov/Archives/edgar/data/764180/000076418019000018/exhibit991-2019cagnyremarks.htm at 4.

[62] *Id.* at 4.

[63] *Id.* at 4.

[64] Angelica LaVito, *E-Cigarette Sales Are Booming Thanks to Juul*, CNBC (Aug. 21, 2018), https://www.cnbc.com/2018/08/21/e-cigarette-sales-are-booming-thanks-to-juul.html.

[65] *Altria Makes $12.8 Billion Minority Investment in JUUL to Accelerate Harm Reduction and Drive Growth*, BusinessWire (Dec. 20, 2018), https://www.businesswire.com/news/home/20181220005318/en/Altria-12.8-Billion-Minority-Investment-JUUL-Accelerate.

CLASS ACTION COMPLAINT
JURY TRIAL DEMANDED
() - 20

experience to help JUUL expand its reach and efficiency" and offering JUUL the support of "Altria's sales organization, which covers approximately 230,000 retail locations." It also gave JUUL access to its "premier" retail shelf space while allowing it to continue to sell its flavored products online and provided JUUL with access to the databases of all of Altria's companies. According to Willard, Altria was "excited to support JUUL's highly-talented team and offer [Altria's] best-in-class services to build on their tremendous success." Altria admitted that minors were using JUUL products and that "underage use of e-cigarette product is a problem." Nevertheless, that it believed its investment in JUUL "strengthens its financial profile and enhances future growth prospects."

46.    Altria's decision to prioritize profits over the dangers of youth vaping did not go unnoticed. On February 6, 2019, former FDA Commissioner Scott Gottlieb, sent Altria another letter "regarding representations" made by Altria acknowledging that it "has an obligation to take action to help address the mounting epidemic of youth addiction to tobacco products."[66] Commissioner Gottlieb told Altria that its recent purchase of a 35% ownership of JUUL "contradict[s] the commitments you made to the FDA." The FDA demanded Altria be prepared to explain itself regarding its "plans to stop marketing e-cigarettes and to address the crisis of youth use of e-cigarettes." Commissioner Gottlieb told Altria that "deeply concerning data" shows that "youth use of JUUL represents a significant proportion of overall use of e-cigarette products by children" and despite any steps the companies had taken to address the issue he "ha[d] no reason to believe these youth patterns of use are abating in the near term, and they certainly do not appear to be reversing."

---

[66] Scott Gottlieb, *Letter to Howard Willard,* U.S. Food and Drug Admin. (Feb. 6, 2019),
https://www.fda.gov/media/122589/download.

CLASS ACTION COMPLAINT
JURY TRIAL DEMANDED
() - 21

47.     The companies met with Gottlieb in March 2019 in a meeting the Commissioner described as "difficult."[67] Gottlieb "did not come away with any evidence that public health concerns drove Altria's decision to invest in JUUL, and instead sa[id] it looks like a business decision." Just a few weeks later, Gottlieb resigned his position.

48.     As mentioned above, Altria's investment in JUUL is not only a financial contribution. Altria is working to actively help run JUUL's operations and expand JUUL's sales. Altria's investment brings legal and regulatory benefits to JUUL, by helping with patent infringement battles and consumer health claims and helping to navigate the regulatory waters and FDA pressure. Altria also brings lobbying muscle. In addition, Altria's arrangement with JUUL gives JUUL greater access to retail. JUUL has been in 90,000 US retail outlets, while Altria reaches 230,000 US outlets. Altria brings its logistic and distribution experience. Importantly, Altria gives JUUL access to shelf space—and not just shelf space, but space near Altria products and retail displays. The arrangement allows JUUL's tobacco and menthol-based products to receive prominent placement alongside a top-rated brand of combustible cigarettes.

49.     Altria is closely intertwined with JUUL. Not only does Altria's investment also allow it to appoint a third of JUUL's board, but in the last month, JUUL's CEO resigned to be replaced by a career Altria executive, K.C. Crosthwaite. Crosthwaite had most recently served as the vice president and chief growth officer of Altria Client Services LLC, overseeing the company's work, including digital marketing, packaging design & innovation, product development, and safety, health, and environmental affairs. Crosthwaite is a career Altria executive who knows Big Tobacco's playbook all too well, having previously serving as the

---

[67] Kate Rooney and Angelica LaVito, *Altria shares fall after FDA's Gottlieb describes 'difficult' meeting on Juul,* CNBC (Mar. 19, 2019), https://www.cnbc.com/2019/03/19/altria-shares-fall-after-fdas-gottlieb-describes-difficult-meeting-on-juul.html.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

president and CEO of Phillip Morris USA, the vice president and general manager at Marlboro, and the vice president of strategy and business development of at Altria Client Services LLC.

50.     This arrangement was profitable for both companies. JUUL employees received $2 billion in bonuses, which, split among the Company's 1,500 employees, was approximately $1.3 million per employee,[68] and Altria received millions of teen customers.

51.     JUUL claims its mission is to "improve the lives of the world's one billion adult smokers by eliminating cigarettes" and its advertising now encourages "making the switch."[69] Similarly, Altria's CEO Howard Willard claimed that it invested in JUUL to help "switching adult smokers" and "reduce harm."[70] But JUUL does not have FDA approval as a cessation device. This may be because, as one Company engineer said: "We don't think a lot about addiction here because we're not trying to design a cessation product at all … anything about health is not on our mind."[71]

52.     JUUL also does not have authority to claim that is product is healthier than cigarettes. On September 9, 2019, the FDA warned JUUL that has violated federal law by making unauthorized representations that JUUL products are safer than cigarettes.[72]

53.     Moreover, even if JUUL were to obtain FDA approval as a legitimate smoking cessation device, this has no impact—and certainly does not excuse—the Defendants' conduct

---

[68] Olivia Zaleski, *Juul Employees to Get $2 Billion Bonus in Altria Deal*, Bloomberg (Dec. 20, 2018), https://www.bloomberg.com/news/articles/2018-12-20/juul-employees-said-to-get-2-billion-bonus-in-altria-deal.

[69] *Our Mission*, JUUL Labs (2019), https://www.juul.com/mission-values.

[70] *Altria Makes $12.8 Billion Minority Investment in JUUL to Accelerate Harm Reduction and Drive Growth,* BusinessWire (Dec. 20, 2018), https://www.businesswire.com/news/home/20181220005318/en/Altria-12.8-Billion-Minority-Investment-JUUL-Accelerate.

[71] Nitasha Tiku, *Startup Behind the Lambo of Vaporizers Just Launched an Intelligent e-Cigarette*, The Verge (Apr. 21, 2015), https://www.theverge.com/2015/4/21/8458629/pax-labs-e-cigarette-juul.

[72] *Juul Labs, Inc. Warning Letter,* U.S. Food and Drug Admin. (Sept. 9, 2019), https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/juul-labs-inc-590950-09092019.

CLASS ACTION COMPLAINT
JURY TRIAL DEMANDED
() - 23

that targets youth. Regardless of the potential health benefits to chain smokers from switching to vaping from smoking, there is no benefit to kids from starting to vape.

54.    To be clear, a key part of revenue growth like JUUL's is addicting youth to nicotine, as the tobacco industry has long known. Beginning in the 1950s, JUUL's now corporate affiliate, Philip Morris, intentionally marketed cigarettes to young people under the age of 21 to recruit "replacement smokers" to ensure the economic future of the tobacco industry.[73] Philip Morris knew that youth smoking was essential to the tobacco industry's success and longevity, as an internal Philip Morris document makes clear: "It is important to know as much as possible about teenage smoking patterns and attitudes. Today's teenager is tomorrow's potential regular customer, and the overwhelming majority of smokers first begin to smoke while still in their teens."[74] For this reason tobacco companies focused on the 14-24 year-old age group, because "young smokers have been the critical factor in the growth" of tobacco companies and the 14-18 year-old group is an increasing segment of the smoking population.[75] As the Vice-President of Marketing at R.J. Reynolds Tobacco Company ["RJR"] explained in 1974, the "young adult market . . . represent[s] tomorrow's cigarette business. As this 14-24 age group matures, they will account for a key share of the total cigarette volume—for at least the next 25 years."[76] RJR's now-infamous Joe Camel "ambassador of Cool" advertising campaign, which ran from 1988

---

[73] Amended Final Opinion at 972, *U.S. v. Philip Morris*, No. 99-cv-2496 (D.D.C. Aug. 17, 2006).

[74] *Tobacco Company Quotes on Marketing to Kids*, Campaign for Tobacco-Free Kids (May 14, 2001), https://www.tobaccofreekids.org/assets/factsheets/0114.pdf.

[75] *Id.*

[76] C.A. Tucker, *Marketing Plans Presentation to RJRI B of D*, Truth Tobacco Industry Documents, U. of S.F. (Sept. 30, 1974), https://www.industrydocumentslibrary.ucsf.edu/tobacco/docs/#id=ypmw0091.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

through 1997, exemplifies the importance the tobacco industry placed on hooking young

smokers early:[77]



### D.    The Secret to JUUL's Success: Hooking Kids

55.     It is clear that JUUL, like Philip Morris and RJR before it, targeted youth as a key

business demographic. A recent study showed that 15-17 year-olds are *16 times* more likely to

use JUUL than 25-34 year-olds.[78]

56.     Indeed, JUUL was well aware from the beginning that its products would appeal

to youth. A former JUUL manager, who spoke to *The New York Times* on the condition that his

name not be used because he worried about facing the ire of the company, said that within

months of JUUL's 2015 introduction, it became evident that teenagers were either buying JUULs

---

[77] *Joe Camel: Character of the Year Advertisement*, Stanford U. Res. into the Impact of Tobacco Advert. (1990), http://tobacco.stanford.edu/tobacco_main/images.php?token2=fm_st138.php&token1=fm_img4072.php&theme_file=fm_mt015.php&theme_name=Targeting%20Teens&subtheme_name=Joe%20Camel.

[78] D.M. Vallone et al., *Prevalence and correlates of Juul use among a national sample of youth and young adults*, Tobacco Control (Oct. 29, 2018), http://dx.doi.org/10.1136/tobaccocontrol-2018-054693.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

online or finding others who made the purchases for them. Some people bought more JUUL kits on the company's website than they could individually use—sometimes 10 or more devices at a time. "First, they just knew it was being bought for resale," said the former senior manager, who was briefed on the company's business strategy. "Then, when they saw the social media, in fall and winter of 2015, they suspected it was teens."[79]

57.    This "suspicion" has been confirmed by the U.S. Surgeon General, who found that JUUL's Twitter account was being followed by adolescents and that 25% of those re-tweeting official JUUL tweets were under 18 years old.[80]

58.    Because of Big Tobacco's demonstrated effectiveness at addicting youth to nicotine, cigarette manufacturers operate under tight restrictions regarding their advertising and marketing activities. By way of example, cigarette companies may not:

> A.    use outdoor advertising such as billboards;
>
> B.    sponsor events;
>
> C.    give free samples;
>
> D.    pay any person to "use, display, make reference to or use as a prop any Tobacco Product, Tobacco Product package . . . in any "Media;"
>
> E.    pay any third party to conduct any activity which the tobacco manufacturer is prohibited from doing; or
>
> F.    sell "flavored" cigarettes.

59.    All of these above activities were prohibited because of their effectiveness at appealing to youth. As described below, all of these activities figured prominently in JUUL's marketing campaign.

---

[79] Matt Richtel & Sheila Kaplan, *Did Juul Lure Teenagers and Get 'Customers for Life'?* N.Y. Times (Aug. 27, 2019), https://www.nytimes.com/2018/08/27/science/juul-vaping-teen-marketing.html.

[80] Adams, *supra* note 2.

CLASS ACTION COMPLAINT
JURY TRIAL DEMANDED
() - 26

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

60.     According to Dr. Robert Jackler, an otolaryngologist and professor at Stanford University School of Medicine and principal investigator for SRITA, JUUL's initial marketing was "patently youth oriented."[81] The JUUL's 2015 ad campaign, called "Vaporized" was designed to create a "cult-like following."[82] Its imagery featured a vivid color scheme and models in their twenties in poses that researchers note are evocative of behaviors more characteristic of underage teens than mature adults.[83] Dr. Jackler and his colleagues found it "clear" that this imagery resonated with underage teens who aspire to emulate trendsetting young adults.[84]

61.     Tobacco advertisers have long understood that teens are attracted to such imagery. The Vaporized campaign was featured on the front page of VICE magazine, "the #1 youth media company in the world."[85] In the summer of 2015, an animated series of Vaporized billboards, with the campaign's youth-appealing imagery, were displayed in New York's Times Square.[86]

62.     Over the first year after JUUL launched its ad campaign in June 2015, it held a series of at least 50 highly stylized parties, typically with rock music entertainment, in cities across the United States.[87] Thousands of young people were given free nicotine-filled JUULpods (appropriately named "JUUL starter kits"), and JUUL posted photos of various young people

---

[81] Robert K. Jackler, *The Role of the Company in the Juul Teen Epidemic, Testimony of Robert Jackler before the House Subcommittee on Economic and Consumer Policy* (July 24, 2019), https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2019.07.24%20Jackler%20Testimony.pdf at 2 ("Jackler Testimony").
[82] *Id.* at 4.
[83] Jackler et al., *supra* note 25.
[84] *Id.* at 7.
[85] *Id.* at 5.
[86] *Id.*
[87] *Id.* at 3

CLASS ACTION COMPLAINT
JURY TRIAL DEMANDED
() - 27

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

enthusiastically puffing on JUULs across their social media channels.[88] JUUL also featured

popular stars such as Katy Perry holding a JUUL at the Golden Globes.[89]



90



91

[88] *Id.*

[89] *Jackler Testimony* at 8.

[90] Kathleen Chaykowski, *The Disturbing Focus of Juul's Early Marketing Campaigns*, Forbes (Nov. 16, 2018), https://www.forbes.com/sites/kathleenchaykowski/2018/11/16/the-disturbing-focus-of-juuls-early-marketing-campaigns/#3da1e11b14f9.

[91] *Id.*

CLASS ACTION COMPLAINT
JURY TRIAL DEMANDED
() - 28

63.     JUUL knew these images would be successful in achieving this result because it intentionally crafted them to mimic specific traditional tobacco advertisements that Big Tobacco had used to target teens. In fact, many of JUUL's ads are nearly identical to old cigarette ads that were designed to get teens to smoke. Like its Big Tobacco predecessors, the focus of Juul's initial marketing was on colorful ad campaigns using eye-catching designs and youth-oriented imagery with themes of being cool, carefree, stylish, attractive, sexy, and popular—unusual themes and images if one's objective is to promote an adult's only smoking cessation device.



  

---

92 *Virginia Slims vs Juul Advertisement*, Stanford U. Res. into the Impact of Tobacco Advert. (2015), http://tobacco.stanford.edu/tobacco_main/images-comp.php?token2=fm_tn_st328.php&token1=fm_tn_img10799.php&theme_file=fm_tn_mt035.php&theme_name=Cigs%20vs.%20eCigs&subtheme_name=Cigs%20vs%20eCigs%20JUUL.

93 Belluz, *supra* note 19.

CLASS ACTION COMPLAINT
JURY TRIAL DEMANDED
() - 29

64.     JUUL used Big Tobacco's advertising imagery, but coupled it with a modern, state-of-the-art marketing campaign designed to target youth. It relied heavily on social media, crafting a powerful online presence, which persists even after JUUL deleted its accounts in the face of mounting public scrutiny. JUUL was particularly active on Instagram, which is the most popular social media site among teens.[94] JUUL cultivated hashtags, allowing the Company to blend its ads in with wide range of user content, increasing exposure while concealing the commercial nature of the content.[95] JUUL then used hashtags to reinforce the themes it crafted in its product design, like #style, #technology, #smart, and #gadget. JUUL's hashtags attracted an enormous community of youthful posts on a wide array of subjects. According to Dr. Jackler, #Juul contains literally thousands of juvenile postings, and numerous Instagram hashtags contain the JUUL brand name.[96] Even after JUUL halted its own social media posts in November 2018, viral peer-to-peer promotion among teens insured continued corporate and product visibility among youth.[97] In fact, community posts about JUUL increased after JUUL itself quit social media in the Fall of 2018. Prior to November 2018, over a quarter of a million posts appeared. In the eight months *after* JUUL halted its promotional postings, the rate of community postings increased significantly, resulting in the number of posts doubling to over half a million.[98]

65.     JUUL also paid social media influencers to post photos of themselves with JUUL devices and to use the hashtags that it was cultivating.[99] JUUL entered a contract with an advertising agency specifically to identify and recruit social media influencers that had at least

---

[94] Jackler et al., *supra* note 25.

[95] *Id.* at 23.

[96] *Jackler Testimony* at 10.

[97] *Id.* at 11.

[98] *Id.*

[99] Jackler et al., *Juul Advertising Over Its First Three Years On The Market*, Stanford Res. into the Impact of Tobacco Advert. (Jan. 31, 2019), *supra* note 25.

CLASS ACTION COMPLAINT
JURY TRIAL DEMANDED
() - 30

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

30,000 followers to, according to an internal JUUL email, "establish a network of creatives to leverage as loyalists" for the JUUL brand.[100] One such influencer was Christina Zayas, whom JUUL paid $1,000 for just one blog post and one Instagram post in the Fall of 2017.



[101]

66.     JUUL instituted an "affiliate program" to recruit those who authored favorable reviews of its products by providing such reviewers with a 20% discount of purchases of JUUL products.[102] It even recruited JUUL users to act as part of their marketing team by asking users to "refer a friend and get a discount."[103]

67.     Such tactics masked what were in fact JUUL advertisements as user content, further increasing exposure and ultimately solidifying the company in teen pop culture as a form

---

[100] Kenrick Cai, *Juul Funded High Schools, Recruited Social Media Influencers To Reach Youth, House Panel Charges*, Forbes (July 25, 2019), https://www.forbes.com/sites/kenrickcai/2019/07/25/juul-high-schools-influencers-reach-youth-house-investigation/#57735a4a33e2.

[101] Michael Nedelman et al., *#Juul: How social media hyped nicotine for a new generation*, CNN Health (Dec. 19, 2018), https://www.cnn.com/2018/12/17/health/juul-social-media-influencers/index.html.

[102] *Id.* at 9-10.

[103] *Id.* at 9.

of cultural currency. JUUL's strategy was so successful in embedding its products into pop culture that it entered the vernacular as a verb. The JUUL device and the term "juuling" are so pervasive that JUUL effectively eliminated not only competitors, but also any potentially alarming terms like "smoking" or "e-cigarette," which could alert users of the true nature of the device or activity. A recent study found that 63% of adolescent JUUL users did not know that JUULpods contain nicotine.[104] This has worked to JUUL's advantage and was in fact a deliberate part of the its strategy. In the first year after its launch, not one of JUUL's 171 promotional emails said anything about nicotine content,[105] and the it did not include nicotine warnings on the JUUL packaging until August 2018, when it was forced to do so.

68.     The design of JUUL's product is also acutely attractive to youth. Unlike most of its predecessors, JUUL looks nothing like a cigarette. Instead, JUUL is sleek and linear and seems like the latest tech invention. This is not surprising, given the founders' Silicon Valley product design education and training. The evocation of technology makes JUUL device familiar and desirable to the younger tech-savvy generation, particularly teenagers. The JUUL device even has features reminiscent of youth-oriented tech culture and gaming, like "secret" features users can unlock, such as making the indicator light flash rainbow colors in "party mode." JUUL has been so successful in emulating technology that the small, rectangular devices are often mistaken for—or passed off as—flash drives.

69.     The ability to conceal a JUUL is also part of the appeal for adolescents. The devices are small and slim, so they fit easily in a closed hand or a pocket. The ease and

---

[104] *Juul e-Cigarettes Gain Popularity Among youth, But Awareness of Nicotine Presence Remains Low*, Truth Initiative (Apr. 18, 2018), https://truthinitiative.org/sites/default/files/media/files/2019/03/JUUL-E-cigarettes-Gain-Popularity-Among-Youth-But-Awareness-of-Nicotine-Presence-Remains-Low.pdf.
[105] Jackler et al., *supra* note 25 at 25.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

simplicity of use—there is nothing to light or unwrap, not even an on-off switch—also make it possible to covertly use a JUUL behind a turned back, which has become a trend in many schools. Finding new ways to hide the ever-concealable JUUL has spawned products designed just for that purpose, such as apparel that allows the wearer to use the device while it is concealed in the drawstring of a hoodie or the strap of a backpack.[106]

70.    JUUL also created special flavors that make its addictive, high-tech device even more attractive to adolescents. Tobacco companies have known for decades that flavored products are key to nicotine adoption by youth. A 1972 Brown & Williamson memorandum: "Youth Cigarette – New Concepts," specifically noted the "well known fact that teenagers like sweet products."[107] A 1979 Lorillard memorandum concluded that younger customers would be "attracted to products with 'less tobacco taste," and even proposed borrowing data from the "Life Savers" candy company to determine which flavors enjoyed the widest appeal among youth.[108] According to 2004 data, 17 year old smokers were more than three times likely as those over 25 to smoke flavored cigarettes and viewed flavored cigarettes as safer.[109] For this reason, in 2009 the FDA banned flavored cigarettes pursuant to its new authority under the Family Smoking Prevention and Tobacco Control Act of 2009. In announcing the ban, FDA Commissioner Dr. Margaret Hamburg declared that "flavored cigarettes are a gateway for many children and young adults to become regulator smokers."[110]

---

[106] Evie Blad, *'Juuling' and Teenagers: 3 Things Principals and Teachers Need to Know*, Educ. Wk. (July 18, 2018), https://www.edweek.org/ew/articles/2018/07/18/juuling-and-teenagers-3-things-principals-and.html.

[107] September 1972 memorandum to Brown & Williamson from Marketing Innovations, "Youth Cigarette - New Concepts." Bates No. 170042014.

[108] Lorillard memo on sale of Newport cigarettes, 1978 Bates No. 03537131 -03537132EXHIBIT101.

[109] Gardiner Harris, *Flavors Banned From Cigarettes to Deter Youth,* N.Y. Times (Sept. 22, 2009) https://www.nytimes.com/2009/09/23/health/policy/23fda.html.

[110] *Id.*

CLASS ACTION COMPLAINT
JURY TRIAL DEMANDED
() - 33

71.    There is no reason to believe that flavors play any different role with respect to e-cigarettes and youth. In fact, a 2017 study of the cigarette flavor ban found that the ban was effective in lowering the number of smokers and the amount smoked by smokers, though it was associated with an increased use of menthol cigarettes (the only flavor still available).[111] According to the Surgeon General, 85% of adolescents who use e-cigarettes use flavored varieties.[112] Studies also show that flavors motivate e-cigarette initiation among youth,[113] and that youth are much more likely to use flavored tobacco products than adults are.[114] In fact, in September 2019, the State of Michigan banned flavored e-cigarettes, a step the governor said was needed to protect young people from the potentially harmful effects of vaping, Governor Andrew Cuomo of New York announced that he would pursue emergency regulations to ban the sake of flavored e-cigarettes, and Governor Jay Inslee of Washington State ordered the Washington State Department of Health to ban all flavored vapor products.[115, 116] Despite JUUL's claims that its target market is adult smokers, the Company entered the market with

---

[111] https://tobacco.ucsf.edu/more-evidence-support-eliminating-flavors-reduce-youth-cigarette-and-e-cigarette-use; referencing Courtemanche, Charles J. et al. Influence of the Flavored Cigarette Ban on Adolescent Tobacco Use, American Journal of Preventive Medicine 2017; 52(5):e139 - e146; and MB. Harrell, et al. Flavored e-cigarette use: Characterizing youth, young adult, and adult users. Prev Med Rep. 2017; 5: 33–40. Published online 2016 Nov 11. doi: 10.1016/j.pmedr.2016.11.001 PMCID: PMC5121224.

[112] E-Cigarette Use Among Youth and Young Adults, U.S. Dept. of Health and Human Services (2016), https://www.ctclearinghouse.org/Customer-Content/www/topics/2444-E-Cigarette-Use-Among-Youth-And-Young-Adults.pdf (accessed Oct. 4, 2019).

[113] Karl Paul, *Flavored Vapes Lure Teens Into Smoking and Nicotine Addiction, Study Shows*, MarketWatch (Feb. 26, 2019), https://www.marketwatch.com/story/flavored-vapes-lure-teens-into-smoking-and-nicotine-addiction-study-shows-2019-02-25.

[114] AC Villanti et al., *Flavored Tobacco Product Use in Youth and Adults: Findings From the First Wave of the PATH Study*, 53 Am. J. of Preventative Med. 139 (2017), https://www.ncbi.nlm.nih.gov/pubmed/28318902.

[115] Jesse McKinley & Christina Goldbaum, *New York Moves to Ban Flavored E-Cigarettes by Emergency Order*, N.Y.Times (Sept. 15, 2019), https://www.nytimes.com/2019/09/15/nyregion/vaping-ban-ny.html?smid=nytcore-ios-share.

[116] https://www.governor.wa.gov/sites/default/files/19-03%20-%20Addressing%20the%20Vaping%20Public%20Health%20Crisis%20%28tmp%29.pdf?utm_medium=email&utm_source=govdelivery

flavors like Cool Mint, Crème Brulee, Fruit Medley, Cucumber, and Mango. These flavors were the reason countless adolescents started using JUUL products.



72.    The flavors pose dangers beyond luring young people into trying nicotine. Studies now show these sweet and fruity flavors present distinct additional health hazards. Researchers have found that some of the chemicals JUUL uses for flavor and perfume—particularly in the Crème Brulee flavor—contain relatively high levels of acetals.[118] Acetals are airway-irritating chemicals that may cause lung damage.[119] Dr. Robert Jackler said that test results have shown that JUUL's sweet and fruity flavors "contribute[] to the increasing body of evidence documenting toxicological effects of e-cig vapor."[120]

---

[117] Chaykowski, *supra* note 90.
[118] Susie Neilson, *Irritating Compounds Can Show Up in 'Vape Juice'*, NPR (July 30, 2019), https://www.npr.org/sections/health-shots/2019/07/30/746238009/irritating-compounds-discovered-in-vape-juice.
[119] *Id.*
[120] *Id.*

CLASS ACTION COMPLAINT
JURY TRIAL DEMANDED
() - 35

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

E.      **The Cost of JUUL's Success**

73.      In addition to designing its devices to be particularly attractive to youth, JUUL designed its devices to be highly addictive. Unlike most other e-cigarettes, which use freebase nicotine, JUUL uses patented nicotine salts from which it makes liquid nicotine cartridges, or JUULpods.[121] Each JUULpod is, according to the Company, the equivalent of a pack of cigarettes. Each pod contains an alarming amount of nicotine, with up to 59 mg per ml—an amount that is roughly three times the amount of nicotine that can be sold to consumers in the European Union in a JUULpod. On top of ramping up the amount of nicotine, JUULpods enabled the Company to increase the rate and amount of nicotine delivery to the JUUL user, roughly doubling the concentration and tripling the delivery speed of nicotine of the average e-cigarette.[122]

74.      Big Tobacco spent decades manipulating nicotine in order to foster and maintain addiction in their customers. RJR developed and patented nicotine salt additives, including nicotine benzoate, to increase nicotine delivery in cigarette smoke. The objective was to provide an additional "nicotine kick" based on increased nicotine absorption associated with lower pH. JUUL uses this very same concept for its market-dominating e-cigarettes. The Company's patent for its nicotine salts describes a process for combining benzoic acids with nicotine, a formulation that mimics the nicotine salt additive developed by RJR. JUUL's use of benzoic acid and manipulation of pH affect the palatability of nicotine inhalation by reducing the "throat hit" that users experience when vaping. Indeed, this was the objective behind using nicotine salts (as

---

[121] Rachel Becker, *Juul's Nicotine Salts Are Dominating the Market – And Other Companies Want In*, The Verge (Nov. 21, 2018), https://www.theverge.com/2018/11/21/18105969/juul-vaping-nicotine-salts-electronic-cigarettes-myblu-vuse-markten.

[122] *How Much Nicotine is In Juul?*, Truth Initiative (Feb. 26, 2019), https://truthinitiative.org/research-resources/emerging-tobacco-products/how-much-nicotine-juul.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

compared to "free base nicotine" which has a higher pH). According to Ari Atkins, one of the inventors of the JUUL device, "[i]n the tobacco plant, there are these organic acids that naturally occur. And they help stabilize the nicotine in such a way that makes it . . . I've got to choose my words carefully here: Appropriate for inhalation."[123]

75.    Because smokers are already accustomed to a certain level of harshness and throat hit, developing a product with low levels of harshness and minimal "throat hit" is only a critical concern if your goal is to appeal to non-smokers, for example, youth. Minimizing the harshness of nicotine also allows one to vape more frequently and for longer periods of time and masks the amount of nicotine being delivered by eliminating the unpleasant throat hit normally associated with large doses of nicotine. The harshness of free base nicotine makes prolonged vaping difficult; the use of nicotine salts solves that problem. Put another way, the nicotine salt technology behind JUULpods makes JUUL "smoke" highly potent yet hardly perceptible.

76.    The increased nicotine exposure facilitated by the JUUL device has serious health consequences. The ease of use and "smoothness" strip away external inhibitors and enable extreme levels of unfettered use. Using the JUUL's own calculations, consuming two JUULpods in a day is the equivalent of consuming two to four packs of cigarettes a day. In this way, JUUL has not only created a new generation of e-cigarette smokers, but has also pioneered a new style of smoking—vaping—that is more nicotine-saturated than ever before.

77.    Increased rates and duration of smoking lead to greater overall exposure to nicotine. Nicotine is a neurotoxin. A highly addictive, psychoactive substance that targets brain areas involved in emotional and cognitive processing, nicotine poses a particularly potent threat

---

[123] David Pierce, *This Might Just Be the First Great E-Cig*, Wired.com (Apr. 21, 2015), https://www.wired.com/2015/04/pax-juul-ecig/.

CLASS ACTION COMPLAINT
JURY TRIAL DEMANDED
() - 37

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

to the adolescent brain, as it can "derange the normal course of brain maturation and have lasting consequences for cognitive ability, mental health, and even personality."[124] Studies also show that exposure to nicotine as a teen—even minimal exposure—biologically primes the brain for addiction and greatly increases likelihood of dependence on nicotine as well as other substances later in life.[125]

78.     According to congressional testimony from Dr. Jonathan Winickoff, a professor of pediatrics at Harvard Medical School and the Director of Pediatric Research in the Tobacco Research and Treatment Center, "[n]icotine addiction can take hold in only a few days, especially in the developing adolescent brain that is particularly vulnerable to addiction to nicotine. . . Many of my patients find Juul nearly impossible to stop. Nicotine withdrawal can cause headaches, insomnia, irritability, anxiety, and depression, and these withdrawal symptoms are one of the primary reasons a nicotine addiction is difficult to overcome."[126] Moreover, there is a lack of effective tools to help adolescents overcome nicotine addiction: there is no good data on how to treat adolescents with e-cigarette dependence; there has not been enough research on youth tobacco cessation strategies; and most of the pharmacological therapies approved for adults have been shown to be ineffective or only marginally effective in adolescents.[127]

---

[124] N.A. Goriounova & H.D. Mansvelder, *Short- and Long-Term Consequences of Nicotine Exposure during Adolescence for Prefrontal Cortex Neuronal Network Function*, Cold Spring Harbor Persp. in Med. 2(12) (Dec. 2012), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3543069/.

[125] National Institute on Drug Abuse, *Principles of Adolescent Substance Use Disorder: A Research Based Guide* (2014), https://www.drugabuse.gov/publications/principles-adolescent-substance-use-disorder-treatment-research-based-guide/introduction.

[126] Jonathan Winickoff, *Testimony of Jonathan Winickoff before the U.S. House of Representatives Committee on Oversight and Reform Subcommittee on Economic and Consumer Policy* ("Winickoff Testimony") at 2, U.S. House Committee on Oversight & Reform (July 24, 2019), https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2019.07.24%20 Winickoff%20AAP%20Testimony.pdf.

[127] *Id.*

CLASS ACTION COMPLAINT
JURY TRIAL DEMANDED
() - 38

79.    Research in Massachusetts indicates that daily JUUL and other e-cigarette use is much more likely to continue than daily cigarette smoking. Out of the surveyed students who reported ever using cigarettes, only 17% indicated that they remained daily smokers. Out of the surveyed students who reported ever using e-cigarettes daily, 58% remained daily users. This data demonstrates both that e-cigarette use in teens is very persistent, a result consistent with the addictiveness of JUUL and the difficulty teens have in trying to quit.[128]

80.    E-cigarette use also puts adolescents at increased risk for cigarette smoking. Compared to adolescents who do not use e-cigarettes, those who do are 3.5 times more likely to begin smoking cigarettes.

81.    The dangerous and destructive nature of nicotine is no recent discovery. As a key ingredient in tobacco products, the drug and its deleterious effects have been the subject of scientific research and public health warnings for decades. Nicotine causes cardiovascular, reproductive, and immunosuppressive problems with devastating effects. Part of the reason the national decline in cigarette use in recent years was such a victory for public health was because there was a corresponding decline in teen exposure to nicotine. From 2000 to 2017, the smoking rate among high school students fell by 73%.[129]

82.    That trend has completely reversed. In 2018, more than one in four high school students in the United States reported using a tobacco product in the past thirty days, a dramatic increase from just one year before.[130] But there was no increase in the use of cigarettes, cigars, or

---

[128] *Id.*

[129] Matthew L. Myers, *Press Release: On 20th Anniversary of State Tobacco Settlement (the MSA), It's Time for Bold Action to Finish the Fight Against Tobacco*, Campaign for Tobacco-Free Kids (Nov. 26, 2018), https://www.tobaccofreekids.org/press-releases/2018_11_26_msa20.

[130] *Progress Erased: Youth Tobacco Use Increased During 2017-2018*, Ctrs. for Disease Control and Prevention, (Feb. 11, 2019), https://www.cdc.gov/media/releases/2019/p0211-youth-tobacco-use-increased.html.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

hookahs during that same time period.[131] There was only increased use in a single tobacco product: e-cigarettes. While use of all other tobacco products continued to decrease as it had been for decades, e-cigarette use increased 78% in just one year.[132] This drastic reversal caused the CDC to describe youth vaping an "epidemic."[133]



**Teen vaping is surging**

Trends in use of cigarettes and vape devices in the past 30 days among 12th-graders

Source: "National Adolescent Drug Trends in 2018," NEJM

83.    The teen vaping epidemic of which JUUL is the architect has and will continue to have significant costs, both for individual users and for society. Nicotine addiction alone has significant health care costs, and these costs are exacerbated when adolescents are involved.

---

[131] *Tobacco Use By Youth Is Rising: E-Cigarettes are the Main Reason*, Ctrs. for Disease Control & Prevention (Feb. 2019), https://www.cdc.gov/vitalsigns/youth-tobacco-use/index.html.
[132] Scott Gottlieb, *Statement from FDA Commissioner Scott Gottlieb, M.D., on proposed new steps to protect youth by preventing access to flavored tobacco products and banning menthol in cigarettes*, U.S. Food & Drug Admin. (Nov. 15, 2018), https://www.fda.gov/news-events/press-announcements/statement-fda-commissioner-scott-gottlieb-md-proposed-new-steps-protect-youth-preventing-access.
[133] Adams, *supra* note 2.

Adolescent nicotine addiction leads to memory and attention problems, and increase chances of addiction later in life, all of which will continue to have long-lasting impacts on society.

84.    Science is also beginning to show that e-cigarettes have the potential to cause even more, distinct health risks and costs. The very same liquids that enable e-cigarettes to deliver nicotine with such potency are proving to be increasingly dangerous. When heated, the vape liquid turns into aerosol, which may contain, in addition to nicotine, ultrafine toxic particles such as lead, additional chemicals, and volatile organic compounds.[134] These chemicals have the potential to be deadly. Vaping is now linked to conditions like chronic obstructive pulmonary disease and seizures, and there were 193 possible cases of severe lung illness associated with e-cigarette product use in 22 states in less than two months in the summer of 2019 alone.[135] Public health officials reported the first known death from a vaping-related illness on August 23, 2019.[136] By early October 2019, lung illness tied to vaping had killed 19 people, and there are now over 1,000 possible cases of serious illness reported from 48 states, including in Washington State.[137] 16% of these patients have been under the age of 18.[138]

85.    Many teenagers are simply unaware of these risks, an ignorance that JUUL preys on. According to Dr. Winickoff, many of his patients believe JUULing is harmless:

> Counseling teens and preteens on e-cigarette use is challenging.  Many of my patients have wildly incorrect beliefs about e-cigarettes.  They know that

---

[134] Lena H. Sun, *He went from hiking enthusiast to 'on death's door' within days. Doctors blamed vaping*, Wash. Post (Aug. 24, 2019), https://www.washingtonpost.com/health/one-mans-near-death-experience-with-vaping-related-lung-failure/2019/08/24/ca8ce42c-c5b4-11e9-9986-1fb3e4397be4_story.html?arc404=true.

[135] *CDC, FDA, States Continue to Investigate Severe Pulmonary Disease Among People Who Use E-cigarettes*, Ctrs. for Disease Control & Prevention (Aug. 21, 2019), https://www.cdc.gov/media/releases/2019/s0821-cdc-fda-states-e-cigarettes.html.

[136] Matt Richtel & Sheila Kaplan, *First Death in a Spate of Vaping Sicknesses Reported by Health Officials*, N.Y. Times (Aug. 23, 2019), https://www.nytimes.com/2019/08/23/health/vaping-death-cdc.html.

[137] Denise Grady, *Vaping Illnesses Top 1,000, C.D.C.*, N.Y. Times (Oct. 3, 2019), https://www.nytimes.com/2019/10/03/health/vaping-illnesses-cdc.html.

[138] *Id.*

CLASS ACTION COMPLAINT
JURY TRIAL DEMANDED
() - 41

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

cigarettes are dangerous, but assume that Juul—since it's ubiquitous, comes in
child-friendly flavors, and is marketed as a healthier alternative to smoking—
must be harmless.  I have to explain to kids that e-cigarettes do not have the same
positive health benefits as the fruits whose flavor they copy.  Even the term vapor
calls to mind harmless water vapor.  There is no water in these products.

Winickoff Testimony at 1.

### F.    JUUL's Remedial Measures

86.     In the face of increasing public scrutiny and pressure, JUUL has taken action to

curb underage use of its products, but its efforts have been ineffective at best and aggravating at

worse. After media and researchers brought JUUL's advertising tactics front and center, it

launched a new ad campaign focusing on former smokers and deleted social media accounts.

But, JUUL designed its social media campaign to subsist off of user-made content, which

remains unaffected by the absence of a JUUL-run account. In fact, as noted above, posts relating

to JUUL increased after it stopped its direct social advertising campaign.

87.     JUUL's efforts to curb underage use through alterations to the product itself are

similarly either ineffective or potentially damaging. JUUL's approach to its flavored products

illustrates this point. In response to serious concerns about flavored products and youth vaping,

JUUL did the following: (1) it slightly modified the flavor names (i.e., "Cool Mint" is now

"Mint," "Crème Brulee" is now "Creme"); and (2) it limited the flavors carried by retail stores to

tobacco and mint, while continuing to offer the full range of flavors (including popular ones such

as Mango) online—a market which teens are particularly aware and adept at navigating. As Dr.

Winickoff testified before Congress:

[it is] completely false to suggest that mint is not an attractive flavor to children.
From candy canes to toothpaste, children are introduced to mint flavor from a
young age.  Not only do children enjoy mint, but it has special properties that
make it an especially dangerous flavor for tobacco.  Menthol's anesthetic
properties cool the throat, mask the harshness of nicotine, and make it easier for

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

children to start using and continue using tobacco products.  The impact of mint and menthol flavors on increasing youth tobacco addiction is well documented.

Winickoff Testimony at 3.

88.     Similarly, restricting other flavors to online sales is of limited effectiveness. According to Dr. Winickoff, 80% of children get e-cigarettes from social sources, such as older friends, meaning that if the products are available for sale somewhere, children will get them.[139]

**G.    JUUL and Schools**

89.     In addition to severe health consequences, widespread "JUULing" has placed severe burdens on society and schools in particular. It is not an overstatement to say that JUUL has changed the educational experience of students across the nation. As one vape shop manager told KOMO News, "It's the new high school thing. Everyone's got the JUUL."[140]

90.     JUUL use has completely changed school bathrooms—now known as "the Juul room."[141] As one high school student explained, "it's just a cloud."[142] The ubiquity of JUUL use in high school bathrooms has generated numerous online spoofs about "the juul room."

---

[139] *Id.*

[140] *Juuling at School*, KOMO News (2019), https://komonews.com/news/healthworks/dangerous-teen-trend-juuling-at-school.

[141] Moriah Balingit, *In the 'Juul room': E-cigarettes spawn a form of teen addiction that worries doctors, parents and schools*, Washington Post (Jul. 26, 2019), https://www.washingtonpost.com/local/education/helpless-to-the-draw-of-nicotine-doctors-parents-and-schools-grapple-with-teens-addicted-to-e-cigarettes/2019/07/25/e1e8ac9c-830a-11e9-933d-7501070ee669_story.html.

[142] Greta Jochem, *Juuling in School: e-Cigarette Use Prevalent Among Local Youth*, Daily Hampshire Gazette (Nov. 13, 2018), https://www.gazettenet.com/Juuling-in-Schools-21439655.

CLASS ACTION COMPLAINT
JURY TRIAL DEMANDED
() - 43

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384



why are there toilets in the juul room

143

91.    Kids have also coined the term "nic sick"—which, as one high school student explained to CBS News, "kinda seems like a really bad flu, like, just out of nowhere. Your face goes pale, you start throwing up and stuff, and you just feel horrible."[144]

92.    Such rampant JUUL use has effectively added another category to teachers' and school administrators' job descriptions; many now receive special training to respond to the various problems that JUUL use presents, both in and out of the classroom. A national survey of middle schools and high schools found that 43.3% of schools have had to implement not only an

---

[143] *Juul Hashtag Meme*, Stanford U. Res. into the Impact of Tobacco Advert. (2018), http://tobacco.stanford.edu/tobacco_main/images_pods.php?token2=fm_pods_st681.php&token1=fm_pods_img37610.php&theme_file=fm_pods_mt068.php&theme_name=JUUL&subtheme_name=%23juul.

[144] *High school students say about 20% of their peers are vaping, some as young as 8th grade,* CBS News (Aug. 31, 2019), https://www.cbsnews.com/news/high-school-students-say-about-20-of-their-peers-are-vaping-some-as-young-as-8th-grade/.

CLASS ACTION COMPLAINT
JURY TRIAL DEMANDED
() - 44

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

e-cigarette policy but a JUUL-specific policy.[145] Participants in the survey reported multiple barriers to enforcing these policies, including the discreet appearance of the product, difficulty pinpointing the vapor or scent, and the addictive nature of the product.[146]

93.    Across the United States, schools have had to divert resources and administrators have had to go to extreme lengths to respond to the ever-growing number of students using JUULs on school grounds. According to the Truth Initiative, more than 40 percent of all teachers and administrators reported that their school uses camera surveillance near the school's restroom, almost half (46 percent) reported camera surveillance elsewhere in the school, and 23 percent reported using assigned teachers for restroom surveillance.[147] Some schools have responded by removing bathroom doors or even shutting bathrooms down,[148] and schools have banned flash drives to avoid any confusion between flash drives and JUULs.[149] Schools have also paid thousands of dollars to install special monitors to detect vaping, which they say is a small price to pay compared to the plumbing repairs otherwise spent as a result of students flushing vaping paraphernalia down toilets.[150] Other school districts have sought state grant money to create new

---

[145] Barbara A. Schillo, et al., *JUUL in School: Teacher and Administrator Awareness and Policies of E-Cigarettes and JUUL in U.S. Middle and High Schools*, Truth Initiative (Sep. 2019), https://journals.sagepub.com/doi/full/10.1177/1524839919868222?url_ver=Z39.88-2003&rfr_id=ori:rid:crossref.org&rfr_dat=cr_pub%3dpubmed

[146] *Id.*

[147] *How are schools responding to JUUL and the youth e-cigarette epidemic?*, Truth Initiative, (Jan. 18, 2019) https://truthinitiative.org/research-resources/emerging-tobacco-products/how-are-schools-responding-juul-and-youth-e-cigarette

[148] Ana B. Ibarra, *The Juul's So Cool, Kids Smoke It In School*, Kaiser Health News (Mar. 26, 2018), https://khn.org/news/the-juuls-so-cool-kids-smoke-it-in-school/; Evie Blad, *'Juuling' Craze: Schools Scramble to Deal With Student Vaping*, Educ. Wk. (May 4, 2018), https://www.edweek.org/ew/articles/2018/05/09/juuling-craze-schools-scramble-to-deal-with.html.

[149] Anna B. Ibarra, *Why 'juuling' has become a nightmare for school administrators*, Kaiser Health News (Mar. 2018), https://www.nbcnews.com/health/kids-health/why-juuling-has-become-nightmare-school-administrators-n860106.

[150] Suzanne Monaghan, *Many schools installing vape detectors in bathrooms to discourage e-cigarette use*, KYW Newsradio (June 10, 2019), https://kywnewsradio.radio.com/articles/news/many-schools-installing-vape-detectors-bathrooms-address-rise-e-cigarette-use.

CLASS ACTION COMPLAINT
JURY TRIAL DEMANDED
() - 45

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

positions for tobacco prevention supervisors, who get phone alerts when vape smoke is detected in bathrooms.[151]

94.    Many schools have shifted their disciplinary policies in order to effectively address the JUUL epidemic. Rather than immediately suspending students for a first offense, school districts have created anti-vaping curricula which students are required to follow in sessions held outside of normal school hours, including on Saturdays.[152] Teachers prepare lessons and study materials for these sessions with information on the marketing and health dangers of vaping[153]—extra work which requires teachers to work atypical hours early in the mornings and on weekends.[154] Some schools will increase their drug testing budget to include random nicotine tests for students before they join extracurricular activities.[155] Under this drug-testing protocol, first offenders will undergo drug and alcohol educational programming; second and third offenders with be forced to sit out from extracurriculars and attend substance abuse counseling.[156]

95.    JUUL actively sought to enter school campuses. The Subcommittee on Economic and Consumer Policy ("Subcommittee") conducted a months-long investigation of JUUL, including reviewing tens of thousands of internal documents, and concluded that JUUL

---

[151] Lauren Katims, *California Fights Vaping in Schools,* U.S. News & World Report (Apr. 30, 2019), https://www.usnews.com/news/best-states/articles/2019-04-30/california-focuses-on-education-to-curb-vaping-in-schools.

[152] Lauren Katims, *California Fights Vaping in Schools,* U.S. News & World Report (Apr. 30, 2019), https://www.usnews.com/news/best-states/articles/2019-04-30/california-focuses-on-education-to-curb-vaping-in-schools.

[153] Pat Eaton-Robb, *Discipline or treatment? Schools rethinking vaping response,* Concord Monitor (May 26, 2019), https://www.concordmonitor.com/Discipline-or-treatment-Schools-rethinking-vaping-response-25822972.

[154] Kathy Brown, *School trustees OK discipline for juuling/vaping offenses,* Gillette News Record (Aug. 29, 2019), https://www.gillettenewsrecord.com/news/local/article_5ec28c96-fd48-5ae0-b267-4e417272d020.html.

[155] Christine Hauser, *This School District Has a Way to Combat Vaping: Random Nicotine Tests,* N.Y. Times (June 17, 2019), https://www.nytimes.com/2019/06/17/us/nebraska-vaping-schools.html.

[156] *Id.*

CLASS ACTION COMPLAINT
JURY TRIAL DEMANDED
() - 46

"deliberately targeted children in order to become the nation's largest seller of e-cigarettes."[157] The Subcommittee found that "(1) Juul deployed a sophisticated program to enter schools and convey its messaging directly to teenage children; (2) Juul also targeted teenagers and children, as young as eight years-old, in summer camps and public out-of-school programs; and (3) Juul recruited thousands of online "influencers" to market to teens."[158]

96.    According to the Subcommittee, JUUL was willing to pay schools and organizations hundreds of thousands of dollars to have more direct access to kids. Such attempts included paying a Baltimore charter school organization $134,000 to start a summer camp to teach kids healthy lifestyles, for which JUUL itself would provide the curriculum; offering schools $10,000 to talk to students on campus; and giving the Police Activities League in Richmond, California, $90,000 to provide JUUL's own vaping education program, "Moving On," to teenage students suspended for using cigarettes.[159] Meanwhile, JUUL would collect data about test scores, surveys, and activity logs about the students.

97.    Among the more egregious incidents reported by the Subcommittee was a July 24, 2019 presentation in which no parents or teachers were in the room for the presentation, the message conveyed was that the JUUL product was "totally safe," and the presenter even demonstrated to the students how to use a JUUL.[160] The school was presumably paid for this

---

[157] *Supplemental Memorandum for Hearing on 'Examining JUUL's Role in the Youth Nicotine Epidemic: Parts I & II' from Committee Staff, to Democratic Members of the Subcommittee on Economic and Consumer Policy* (July 25, 2019), https://oversight.house.gov/sites/democrats.oversight.house.gov/files/Supplemental%20Memo.pdf.
[158] *Id.* at 1.
[159] Sheila Kaplan, *Juul Targeted Schools and Youth Camps, House Panel on Vaping Claims*, N.Y. Times (Jul. 25, 2019), https://www.nytimes.com/2019/07/25/health/juul-teens-vaping.html.
[160] *Supplemental Memorandum for Hearing on 'Examining JUUL's Role in the Youth Nicotine Epidemic: Parts I & II' from Committee Staff, to Democratic Members of the Subcommittee on Economic and Consumer Policy* (July 25, 2019), https://oversight.house.gov/sites/democrats.oversight.house.gov/files/Supplemental%20Memo.pdf.

CLASS ACTION COMPLAINT
JURY TRIAL DEMANDED
() - 47

meeting, which was marketed to the school as an anti-smoking initiative. A JUUL spokesman said JUUL is no longer funding such programs.[161]

## H.    Impact on La Conner School District

98.    In Washington, although the percentage of teens reporting cigarette smoking in 2018 is less than half of what it was a decade ago, e-cigarette use increased significantly between 2016 and 2018.[162] Specifically, use of vapor products among 12th grade students increased from 20% in 2016 to nearly 30% in 2018.[163] Washington students also do not understand that the dangers of vaping. According to a statewide survey of Washington students, "only about a third of 10th graders thought vaping was harmful."[164] On September 27, 2019, Governor Jay Inslee ordered the Washington State Department of Health to ban all flavored vaping products.[165] Governor Inslee agreed with the FDA: "e-cigarette use among youth has reached epidemic proportions and this epidemic presents a clear and present danger."[166] He explained that "vapor products containing nicotine are the most commonly used nicotine products in Washington among youth," that "vapor product use increased dramatically among 8th, 10th, and 12th graders between 2016 and 2018" and that "an overwhelming majority" of youth who use vape using

---

[161] *Id.*

[162] Amy Blondin and Kristen Maki, *Alcohol use remains at all time low while vaping use increases among Washington youth,* Washington State Health Youth Survey (Mar. 18, 2019), http://www.askhys.net/Docs/Healthy%20Youth%20Survey%20Substance%20Use%20Press%20Release%20Final.pdf.

[163] https://www.governor.wa.gov/sites/default/files/19-03%20-%20Addressing%20the%20Vaping%20Public%20Health%20Crisis%20%28tmp%29.pdf?utm_medium=email&utm_source=govdelivery

[164] Amy Blondin and Kristen Maki, *Alcohol use remains at all time low while vaping use increases among Washington youth,* Washington State Health Youth Survey (Mar. 18, 2019), http://www.askhys.net/Docs/Healthy%20Youth%20Survey%20Substance%20Use%20Press%20Release%20Final.pdf.

[165] https://www.governor.wa.gov/sites/default/files/19-03%20-%20Addressing%20the%20Vaping%20Public%20Health%20Crisis%20%28tmp%29.pdf?utm_medium=email&utm_source=govdelivery

[166] *Id.*

CLASS ACTION COMPLAINT
JURY TRIAL DEMANDED
() - 48

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

flavored products."[167] Inslee found that "[t]he appeal of flavored nicotine products, as well as advertising and promotion activities targeted at youth, are contributing to the dramatic increase in youth vaping."[168]

99. Skagit County, Washington is also plagued by the youth vaping epidemic. In Skagit County schools in particular, e-cigarette use among 8th graders is higher than the statewide average, and use among 10th graders increased from 11% to 18% in just two years. [169] E-cigarette use among Skagit County 12th graders increased from 18% to 29% over that same timer period.[170]

100. La Conner School District has been directly affected by this surge in youth vaping caused by the Defendants' misconduct. La Conner School District spends substantial sums and resources in addressing and responding to the youth vaping epidemic.

101. La Conner School District is comprised of the Swinomish Preschool, La Conner Elementary, Middle, and High School. In addition to teachers, educational assistants, counselors, principals, and administrators at the respective schools, the District also employs over thirty staff, including the Superintendent and Director of Business Operations.

102. La Conner School District principals and administrators have observed numerous ways that JUUL use has affected the District, including impacts on curriculum development and class time, increased security staff time spent addressing discipline and supervision issues, and

---

[167] *Id.*

[168] *Id.*

[169] Jennifer Johnson and Howard Leibrand, M.D., Skagit County Public Health, *Smoking and Vaping Laws in Washington: State Laws & Local Policy Options*, https://www.skagitcounty.net/Health/Documents/Vaping/VaprProducts_HealthConcernsSummary_Final_7.18.2018.pdf; Washington State Healthy Youth Survey, *County-level HYS 2018 press release estimates*, Available at http://www.askhys.net/Home/Press (last visited Sept. 9, 2019).

[170] *Id.*

CLASS ACTION COMPLAINT
JURY TRIAL DEMANDED
() - 49

increased counselor time spent speaking to addicted students and peers who are concerned about this epidemic.

103.    For example, as JUUL use has expanded, the school has had to develop new curriculum material and devote class time to discuss youth vaping with students in health class.

104.    Security staff has also had to spend increased time addressing student JUUL use. Due to the pervasive use of JUUL products in bathrooms described above, both administrators and security officers now have to spend more time physically supervising students in the bathroom to ensure they are not using JUUL products. Security and administrative staff are also spending significantly more time addressing discipline problems related to JUUL use.

105.    Counselors and prevention specialists at La Conner School District are also effected, having to spend time discussing JUUL use with students and trying to help students who have become addicted. Students are now beginning to tell counselors that they are concerned about their peers using JUUL and are afraid because the students do not know what they are putting in their bodies.

106.    JUUL use is an issue in both the La Conner Middle School and the La Conner High School. Recently, many middle school students are asking high school students to purchase JUUL products for them before Washington's new law raising the vaping age to 21 takes effect on January 1, 2020.

107.    In response to the effects of JUUL's marketing to minors, La Conner School District has also had expend resources on education efforts. It has had to host multiple town halls and meetings to discuss JUUL use. The District held three town hall forums with in the past year in part to discuss the youth vaping epidemic, including one in May and another September of 2019.

108.    Fully addressing the harms to La Conner School District and school districts across Washington State that were caused by Defendants' conduct will require a comprehensive approach, one that includes addiction counselors in schools, prevention education that includes information about the health consequences of JUUL use on adolescents' bodies and minds, developing refusal skills, and addiction treatment options. Without the resources to fund these measures, La Conner School District and others similarly situated will continue to be harmed by the ongoing consequences of Defendants' conduct.

## V.    CLASS ACTION ALLEGATIONS

### A.    Class Definitions

109.    Pursuant to provisions of the Federal Rules of Civil Procedure ("Rule") 23(a), (b)(2), and (b)(3), Plaintiff brings this action on its own behalf and on behalf of a proposed national class of other similarly situated school districts (collectively, "the Nationwide Class"), defined as follows:

> **Nationwide Class**: All school districts in the United States and its territories that have spent resources addressing, or whose property has been affected by, student use of JUUL products.

110.    In addition to the Nationwide Class and pursuant to Rule 23(c)(5), Plaintiff seeks to represent the following Washington State Sub-Class as well as any subclasses or issue classes Plaintiff may propose an/or the Court may designate at the time of class certification:

> **<u>Washington Sub-Class</u>**: All school districts in Washington State that have spent resources addressing, or whose property has been affected by, student use of JUUL products.

111.    Excluded from the Classes are Defendants and their subsidiaries and affiliates; all school districts who make a timely election to be excluded from the Classes; and the Judge to

CLASS ACTION COMPLAINT
JURY TRIAL DEMANDED
() - 51

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

whom this case is assigned and his or her immediate family. Plaintiff reserves the right to revise the definitions of the Classes based upon information learned through discovery.

112.    Certification of Plaintiff's claims for classwide treatment is appropriate because Plaintiff can prove the elements of its claims regarding liability and entitlement to injunctive relief, abatement, and damages on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

113.    This action has been brought and may be properly maintained on behalf of the Classes proposed herein under Federal Rule of Civil Procedure 23.

114.    Plaintiff reserves the right to modify the definition of the Classes or add Sub-Classes prior to class certification.

## VI.    CLASS CERTIFICATION REQUIREMENTS: FEDERAL RULE OF CIVIL PROCEDURE 23

115.    **Numerosity: Rule 23(a)(1)**. The members of the Classes are so numerous and geographically dispersed that individual joinder of all members of the Classes is impracticable. Plaintiff do not know the exact size of the Classes, but there are over 13,000 school districts in the United States and almost 300 school districts in Washington State alone. Members of the Classes may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, social media, and/or published notice.

116.    **Commonality and Predominance: Rules 23(a)(2) and 23(b)(3)**. This action involves significant common questions of law and fact, which predominate over any questions affecting individual members of the Classes, including, but not limited to:

        A.    Whether Defendants engaged in the conduct alleged herein;

        B.    Whether Defendants created a public nuisance;

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

C.    Whether Defendants unlawfully contributed to a public nuisance;

D.    Whether the rise in youth vaping and nicotine addiction was substantially caused by Defendants' conduct;

E.    Whether Defendants' conduct injures or endangers the health and safety of students, teachers, and their communities nationwide;

F.    Whether Defendants' conduct injures or endangers the health and safety of Washington students, teachers, and their communities;

G.    Whether Defendants unlawfully marketed JUUL products to minors;

H.    Whether Defendants continued to market JUUL products to minors after it was on notice that JUUL products were being used in schools;

I.    Whether Defendants engaged in a pattern of racketeering;

J.    Whether the JUUL Enterpirse, in whole or in part, has substantially affected interstate or intrastate commerce;

K.    Whether Plaintiff and members of the Classes are entitled to abatement; and

L.    Whether Plaintiff and members of the Classes are entitled to equitable and injunctive relief.

117.    **Typicality: Rule 23(a)(3)**. Plaintiff's claims are typical of the claims of the members of the Classes whom it seeks to represent under Federal Rule of Civil Procedure 23(a)(3), because La Conner School District and members of the Classes all had to expend resources addressing student JUUL use. Plaintiff and the other members of the Classes suffered damages as a direct proximate result of the same wrongful practices by Defendants. Plaintiff's claims arise from the same practices and courses of conduct that give rise to the claims of the other members of the Classes. Plaintiff's claims are based upon the same legal theories as the claims of the other members of the Classes.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

118.    **Adequacy: Rule 23(a)(4)**. Plaintiff will fairly and adequately represent and protect the interests of the members of the Classes as required by Federal Rule of Civil Procedure 23(a)(4). Plaintiff has retained counsel competent and experienced in complex class action litigation, including MDL litigation and other public nuisance litigation. Plaintiff intends to prosecute this action vigorously. Neither Plaintiff nor its counsel has interests that conflict with the interests of the other members of the Classes. Therefore, the interests of the members of the Classes will be fairly and adequately protected.

119.    **Declaratory and Injunctive Relief: Rule 23(b)(2)**. Defendants have acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Classes as a whole.

120.    **Superiority: Rule 23(b)(3)**. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other members of the Classes are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for members of the Classes to individually seek redress for Defendants' wrongful conduct.

121.    Even if members of the Classes could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

CLASS ACTION COMPLAINT
JURY TRIAL DEMANDED
() - 54

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

# VII.    CAUSES OF ACTION

## COUNT ONE — VIOLATIONS OF THE WASHINGTON PUBLIC NUSIANCE LAW, RCW 7.48.010 *ET SEQ.*

122.    Plaintiff La Conner School District incorporates each preceding paragraph as though set forth fully herein.

123.    Plaintiff brings this claim under RCW 7.48.020 individually and on behalf of the Washington Sub-Class.

124.    Pursuant to RCW 7.48.010, an actionable nuisance is defined as, *inter alia*, "whatever is injurious to health or indecent or offensive to the senses . . ."

125.    Specifically, a "[n]uisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either annoys, injures or endangers the comfort, repose, health or safety of others, offends decency . . . or in any way renders other persons insecure in life, or in the use of property." RCW 7.48.120.

126.    Under Washington law, conduct that substantially and/or unreasonably interferes with the Plaintiff's use of its property is a nuisance even if it would otherwise be lawful.

127.    Pursuant to RCW 7.48.130, "A public nuisance is one which affects equally the rights of an entire community or neighborhood, although the extent of the damage may be unequal."

128.    Pursuant to Skagit County Code Chapter 14.44.120(3), "A violation is detrimental to the public health, safety, and welfare and is a public nuisance. A public nuisance is a continuing offense against the order and economy of Skagit County and is subject to abatement both under this Chapter and RCW Chapter 7.48."

129.    Employees and patrons, including students, of La Conner School District and the Washington Sub-Class have a right to be free from conduct that endangers their health and

CLASS ACTION COMPLAINT
JURY TRIAL DEMANDED
() - 55

safety. Yet Defendants have engaged in conduct which endangers or injures the health and safety of the employees and students of La Conner School District and the Washington Sub-Class by their production, promotion, distribution, and marketing of JUUL products for use by minors in Skagit County and in a manner that substantially interferes with the functions and operations of La Conner School District and the Washington Sub-Class and impacts the public health, safety, and welfare of the entire Skagit County and Washington State communities.

130.    Defendants have created or assisted in the creation of a condition that is injurious to the health and safety of Plaintiff and its students and employees and the Washington Sub-Class and interferes with the comfortable enjoyment of life and property of the entire communities of La Conner School District, Skagit County, and Washington State at large.

131.    Defendants' conduct has directly caused a severe disruption of the public health, order, and safety. Defendants' conduct is ongoing and continues to produce permanent and long-lasting damage.

132.    This harm to the Plaintiff and the members of the Class outweighs any social utility of the Defendants' wrongful conduct because Defendants' conduct violates Washington's public policy against marketing vapor products like JUUL to minors. This policy is expressed through Washington State Governor Jay Inslee's Executive Order 19-03, finding that "it is the policy of the state of Washington to support the health, safety, and well-being of all Washingtonians" and that "e-cigarette use among youth has reached epidemic proportions and that this epidemic presents a clear and present danger." This policy is also expressed through statutes, including but not limiting to

> A.    RCW 26.28.080, under which any person who sells, gives, or permits to be sold or given vapor products to a minor is guilty of a gross misdemeanor;

CLASS ACTION COMPLAINT
JURY TRIAL DEMANDED
() - 56

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

B.  RCW 70.345.140, under which it is illegal for minors to purchase vapor products

C.  RCW 70.345.090, under which it is illegal for any person to conduct a delivery sale or otherwise ship or transport, or cause to be shipped or transported, any vapor product ordered or purchased by mail or through the internet to a minor

133.  Defendants' conduct violated this public policy, including by

A.  Actively seeking to enter school campuses, targeting children as young as eight through summer camps and school programs, extensively targeting youth through social media campaigns, and recruiting "influencers" to market to teens;

B.  Engaging in marketing tactics specifically designed to mislead children and youth and to ensnare minors into nicotine addiction, including by explicitly adopting tactics prohibited from Big Tobacco, with the knowledge that those tactics were likely to ensnare children and youth into nicotine addiction, including using billboards and outdoor advertising, sponsoring events, giving free samples, paying affiliates and "influencers" to push JUUL products on JUUL's behalf, and by selling JUUL in flavors designed to appeal to youth;

C.  Engaging in advertising modeled on cigarette ads and featuring youthful-appearing models and designing advertising in a patently youth-oriented fashion;

D.  Directing advertising to youth media outlets and media designed to appeal to children and youth, such as Instagram and other social media channels;

E.  Hosting youth-focused parties across the United States, at which free JUUL samples were dispensed and in which vaping was featured prominently across JUUL-sponsored social media;

F.  Formulating JUULpods with flavors with the knowledge that such flavors appealed to youth and with the intent that youth become addicted or dependent upon JUUL products; and

G.  Promoting and assisting the growth of the JUUL market and its availability with knowledge that JUUL products were being purchased and used by large numbers of youth.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

134.    The health and safety of the students and employees of La Conner School District and the Washington Sub-Class, including those who use, have used, or will use JUUL products, as well as those affected by others' use of JUUL products, are matters of substantial public interest and of legitimate concern to the Plaintiff's students and employees, as well as to the entire Skagit County and Washington State communities.

135.    Defendants' conduct has affected and continues to affect a substantial number of people within La Conner School District and the Washington Sub-Class and is likely to continue causing significant harm.

136.    But for Defendants' actions, JUUL use by minors would not be as widespread as it is today, and the vaping public health epidemic that currently exists as a result of the Defendants' conduct would have been averted.

137.    Logic, common sense, justice, policy, and precedent indicate Defendants' unfair and deceptive conduct has caused the damage and harm complained of herein. Defendants knew or reasonably should have known that their statements regarding the risks and benefits of JUUL were false and misleading, that their marketing methods were designed to appeal to minors, and that their false and misleading statements, marketing to minors, and active efforts to increase the accessibility of JUUL products and grow JUUL's market share were causing harm to minors and to school districts, including minors in La Conner School District, the District itself, and the Washington Sub-Class. Thus, the public nuisance caused by Defendants was reasonably foreseeable, including the financial and economic losses incurred by La Conner School District and the Washington Sub-Class.

138.    Alternatively, Defendants' conduct was a substantial factor in bringing about the public nuisance even if a similar result would have occurred without it. By directly marketing to

youth and continuing marketing practices after it was evidence that children were using JUUL products in large numbers and were specifically using these products in school, JUUL directly facilitated the spread of the youth vaping epidemic and the public nuisance effecting La Conner School District and members of the Washington Sub-Class. By investing billions of dollars in JUUL and actively working to promote the sale and spread of JUUL products with knowledge of JUUL practice of marketing its products to youth and failure to control youth access to its products, Altria directly facilitated the spread of the youth vaping epidemic and the public nuisance effecting La Conner School District and members of the Washington Sub-Class.

139.    In addition, engaging in any business in defiance of a law regulating or prohibiting the same is a nuisance per se under Washington law. Defendants' conduct described herein of deceptively marketing JUUL products to minors violates RCW 7.48.010 and therefore constitutes a nuisance per se.

140.    Defendants' conduct is especially injurious to La Conner School District because, as a direct and proximate cause of Defendants' conduct creating or assisting in the creation of a public nuisance, Plaintiff and its students and employees have sustained and will continue to sustain substantial injuries.

141.    Plaintiff has had to take steps to mitigate the harm and disruption caused by Defendants' conduct, including the following:

A.    Assigning additional employees to monitor the school bathrooms to ensure students are not using JUUL products;

B.    Spending more time and resources addressing discipline problems at have arisen as a result of JUUL use;

C.    Confiscating JUUL products;

D.    Training teachers and staff regarding JUUL products and JUUL use;

    E.       Training teachers and staff to recognize JUUL products;

    F.       Training teachers and staff on the harms of JUUL use;

    G.      Educating students as to the harm of JUUL use;

    H.      Participating in town hall forums with parents to discuss JUUL use and the youth vaping epidemic;

    I.       Updating its student handbook to address JUUL use; and

    J.       Updating school policies to address JUUL use.

142.    Pursuant to RCW 7.48.020, La Conner School District and the Washington Sub-Class request an order providing for abatement of the public nuisance that Defendants have created or assisted in the creation of, and enjoining Defendants from future violations of RCW 7.48.010.

143.    Pursuant to RCW 7.48.020 and the applicable County Code set forth above, Plaintiff and the Washington Sub-Class also seek the maximum statutory and civil penalties permitted by law, including actual and compensatory damages, as a result of the public nuisance created by Defendants.

144.    Pursuant to RCW 4.22.070, Defendants are jointly and severally liable because they have acted in concert with each other and because Plaintiff is not at fault.

**COUNT TWO — VIOLATIONS OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO"), 18 U.S.C. § 1961, *ET SEQ.***

145.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

CLASS ACTION COMPLAINT
JURY TRIAL DEMANDED
() - 60

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

146.    This claim is brought by Plaintiff against each Defendant for actual damages, treble damages, and equitable relief under 18 U.S.C. § 1964 for violations of 18 U.S.C. § 1961, *et seq.*

147.    At all relevant times, each Defendant is and has been a "person" within the meaning of 18 U.S.C. § 1961(3), because they are capable of holding, and do hold, "a legal or beneficial interest in property."

148.    Plaintiff is a "person," as that term is defined in 18 U.S.C. § 1961(3), and has standing to sue as it was and is injured in its business and/or property as a result of the Defendants' wrongful conduct described herein.

149.    Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." 18 U.S.C. § 1962(c).

150.    Section 1962(d) makes it unlawful for "any person to conspire to violate" Section 1962(c), among other provisions. *See* 18 U.S.C. § 1962(d).

151.    Each Defendant conducted the affairs of an enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c) and § 1962(d).

**A.    Description of the Defendants' Enterprises**

152.    RICO defines an enterprise as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

153.    Under 18 U.S.C. § 1961(4) a RICO "enterprise" may be an association-in-fact that, although it has no formal legal structure, has (i) a common purpose, (ii) relationships among

CLASS ACTION COMPLAINT
JURY TRIAL DEMANDED
() - 61

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

those associated with the enterprise, and (iii) longevity sufficient to pursue the enterprise's purpose. *See Boyle v. United States*, 556 U.S. 938, 946 (2009).

154.    Defendant JUUL and the Altria Defendants formed an association-in-fact enterprise—referred to herein as the JUUL Enterprise. The JUUL Enterprise is an ongoing and continuing business organization consisting of "persons" within the meaning of 18 U.S.C. § 1961(3) that created and maintained systematic links for a common purpose: to maintain and expand JUUL's massive, and ill-gotten, share of the e-cigarette market.

155.    As set forth above, Big Tobacco has long known the importance of targeting youth and addicting them to nicotine. This profits-above-public-health mentality applies with equal to force to e-cigarette market as well as the market for regular cigarettes. What was different here was that Big Tobacco was out-competed by a start-up, albeit a start-up using some of Big Tobacco's tried and true tactics. As set forth in the complaint, JUUL obtained its massive market share over a short time period by successfully targeting youth and addicting youth to nicotine.

156.    JUUL was well aware that its conduct was reprehensible, and that if it became established and widely known that this was how JUUL obtained its massive market share, there would likely be severe consequences. For this reason, it went to great lengths to conceal this conduct by vociferously denying that it was marketing and targeting youth. Instead, JUUL argued that its product was created and designed as a "smoking cessation device"—despite the fact that the FDA never approved it as such, and that this smoking cessation device was slickly designed, easily concealable, and had its own "party mode." These false statements were designed to protect JUUL's market share by concealing its misconduct.

CLASS ACTION COMPLAINT
JURY TRIAL DEMANDED
() - 62

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**B.    The Enterprises Sought to Fraudulently Increase Defendants' Profits and Revenues**

157.    Not everyone was fooled by JUUL's deception, particularly JUUL's competitors in the e-cigarette market. Altria recognized JUUL's tactics for what they were, designed to addict children, and made this clear in a public letter to the FDA on October 25, 2018. Altria even displayed this letter on its website, disclaiming the very marketing and advertising tactics JUUL relied on. At this time, Altria had apparently concluded that it could not out-compete JUUL—that JUUL's massive market share was too great to overcome. Altria informed the FDA that it was exiting the market for pod-based e-cigarettes, on the grounds that these products contributed to the youth vaping epidemic.

158.    Unfortunately, Altria's purported concern for the public health was short-lived. A mere two months after publicly condemning JUUL's tactics for targeting youth, in December of 2018, Altria once again chose to place profits before the public health by making a $12.8 billion equity investment in JUUL, the largest equity investment in US history. Having long followed JUUL's market share dominance with envy, Altria decided to go from a competitor to a co-conspirator. Altria and JUUL thus formed a RICO enterprise—the JUUL Enterprise—with the goal of preserving, and profiting from, JUUL's ill-gotten market share.

159.    The JUUL Enterprise recognized that one of the keys to preserving JUUL's market share was to continue to falsely deny that JUUL marketed its tobacco products to youth. Thus, in furtherance of their Enterprise, JUUL and Altria repeatedly made statements denying that one of JUUL's intended targets for its product was children, that JUUL's product was really created and designed as a smoking cessation device, and that JUUL's product was all along intended for "switchers" (existing smokers that were open to vaping). These statements are false, and constitute mail and wire fraud, predicate acts under RICO.

CLASS ACTION COMPLAINT
JURY TRIAL DEMANDED
() - 63

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

160.    Thus, at all relevant times, each Defendant was aware of the conduct of the JUUL Enterprise, was a knowing and willing participant in that conduct, and reaped profits from that conduct in the form of sales and distribution of JUUL products.

161.    The persons engaged in the JUUL Enterprise are systematically linked through contractual relationships, financial ties, and continuing coordination of activities. The Altria Defendants have invested $12.8 billion dollars in JUUL—the largest equity investment in United States history. This investment gives Altria a 35% stake in JUUL.

162.    Altria has already publicly acknowledged that under the terms of its financial relationship with JUUL, Altria will provide its considerable legal, regulatory and lobbying expertise to help JUUL navigate its relationship with regulators. Presumably this would also include former Commissioner Gottlieb's agency, the FDA. After receiving Altria's October letter criticizing JUUL's tactics, and learning of Altria's $12.8 billion investment, FDA Commissioner Gottlieb was outraged and demanded a meeting. Commissioner Gottlieb described this meeting as "difficult" and "did not come away with any evidence that public health concerns drove Altria's decision to invest in JUUL, and instead sa[id] it looks like a business decision." Roughly one month later, he abruptly resigned his position.

163.    There is regular communication between JUUL and the Altria Defendants in which information regarding Defendants' scheme to protect, maintain and expand JUUL's market share is shared. Typically, this communication occurred, and continues to occur, through the use of the wires and the mail in which Defendants share information regarding the operation of the JUUL Enterprise and its cover-up of JUUL's efforts to target and addict youth.

CLASS ACTION COMPLAINT
JURY TRIAL DEMANDED
() - 64

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

164.    The JUUL Enterprise functions as a continuing unit for the purposes of executing accomplishing its objectives, and when issues arise, each member of the Enterprise agrees to take actions to support the Enterprise.

165.    Each Defendant participated in the operation and management of the JUUL Enterprise by directing its affairs as described herein. Altria's $12.8 billion investment gives it a 35% ownership stake in JUUL, and allows it to appoint a third of its board. In a sign of Altria's management influence and control, last month, JUUL's CEO resigned to be replaced by a career Altria executive, K.C. Crosthwaite. Mr. Crosthwaite had most recently served as the vice president and chief growth officer of Altria Client Services LLC, overseeing the company's work, including digital marketing, packaging design & innovation, product development, and safety, health, and environmental affairs. Crosthwaite is intimately familiar with Big Tobacco's practices, having previously served as the president and CEO of Phillip Morris USA, the vice president and general manager at Marlboro, and the vice president of strategy and business development of at Altria Client Services LLC.

166.    While Defendants participate in, and are members of, the JUUL Enterprise, they have an existence separate from the Enterprise, including distinct legal statuses, affairs, offices and roles, officers, directors, employees, and individual personhood.

167.    Without the willing participation of each Defendant, the JUUL Enterprise's common course of conduct would not be successful.

## C.    Predicate Acts:  Mail and Wire Fraud

168.    To carry out, or attempt to carry out, the objectives of the JUUL Enterprise, the members of the Enterprise, each of whom is a person associated-in-fact with the Enterprise, did knowingly conduct or participate in, directly or indirectly, the affairs of the Enterprise through a

CLASS ACTION COMPLAINT
JURY TRIAL DEMANDED
() - 65

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**Case 3:19-cv-06904-WHO   Document 1   Filed 10/07/19   Page 69 of 77**

pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) and

1962(c), and employed the use of the mail and wire facilities, in violation of 18 U.S.C. § 1341

(mail fraud) and § 1343 (wire fraud).

169.    Specifically, the members of the JUUL Enterprise have committed, conspired to

commit, and/or aided and abetted in the commission of, at least two predicate acts of

racketeering activity (i.e., violations of 18 U.S.C. §§ 1341 and 1343), within the past ten years.

170.    The multiple acts of racketeering activity which the members of the JUUL

Enterprise committed, or aided or abetted in the commission of, were related to each other, posed

a threat of continued racketeering activity, and therefore constitute a "pattern of racketeering

activity."

171.    The racketeering activity was made possible by the Enterprise's regular use of the

facilities, services, and employees of the Enterprise.

172.    The members of the JUUL Enterprise participated in the Enterprise by using mail,

telephone, and the internet to transmit mailings and wires in interstate or foreign commerce.

173.    The members of the JUUL Enterprise used, directed the use of, and/or caused to

be used, thousands of interstate mail and wire communications in service of the Enterprise's

objectives through common misrepresentations, concealments, and material omissions.

174.    In devising and executing the objectives of the JUUL Enterprise, its members

devised and knowingly carried out a material scheme and/or artifice to defraud the public by

denying that JUUL's products were marketed to youth, and that JUUL was really created and

designed as a smoking cessation device.

175.    For the purpose of furthering its desire to preserve and increase its market share,

even at the expense exposing and addicting children to nicotine, the JUUL Enterprise committed

CLASS ACTION COMPLAINT
JURY TRIAL DEMANDED
() - 66

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

these racketeering acts, which number in the thousands, intentionally and knowingly with the specific intent to advance its objectives.

176.    The JUUL Enterprise's predicate acts of racketeering (18 U.S.C. § 1961(1)) include, but are not limited to:

A. Mail Fraud: the JUUL Enterprise violated 18 U.S.C. § 1341 by sending or receiving, or by causing to be sent and/or received, fraudulent materials via U.S. mail or commercial interstate carriers for the purpose of deceiving the public regarding its efforts to market to youth and the true purpose and design behind its products.

B. Wire Fraud: The JUUL Enterprise violated 18 U.S.C. § 1343 by transmitting and/or receiving, or by causing to be transmitted and/or received, fraudulent materials by wire for the purpose of deceiving the public regarding its efforts to market to youth and the true purpose and design behind its products.

The JUUL Enterprise falsely and misleadingly used the mails and wires in violation of 18 U.S.C. § 1341 and § 1343. Illustrative and non-exhaustive examples include the following:

A.    JUUL Labs was founded by former smokers, James and Adam, with the goal of improving the lives of the world's one billion adult smokers by eliminating cigarettes. We envision a world where fewer adults use cigarettes, and where adults who smoke cigarettes have the tools to reduce or eliminate their consumption entirely, should they so desire. (JUUL Labs Website as of Oct. 7, 2019);

B.    "JUUL Labs exists to help adult smokers switch from combustible cigarettes." (JUUL Labs Website as of Oct. 7, 2019);

C.    "JUUL was designed with adult smokers in mind. . . . JUUL provides satisfaction to meet the standards of adult smokers looking to switch from smoking cigarettes" (JUUL Labs Website as of Oct. 7, 2019);

D.    "Our Intent[:] . . . [W]e believe that vaping can have a positive impact when used by adult smokers, and can have a negative impact when used by nonsmokers. Our goal is to maximize the positive and reduce the negative." (JUUL Labs Website as of Oct. 7, 2019);

E.    "It's a really, really important issue.  We don't want kids using our products."( JUUL Chief Administrative Officer Ashely Gould, CNBC Interview, Dec. 14, 2017);

F.     "We market our products responsibly, following strict guidelines to have material directly exclusively toward adult smokers and never to youth audiences." (JUUL Social Media Post, Mar. 14, 2018);

G.     "We don't want anyone who doesn't smoke, or already use nicotine, to use JUUL products. We certainly don't want youth using the product. It is bad for public health, and it is bad for our mission. JUUL Labs and FDA share a common goal – preventing youth from initiating on nicotine. To paraphrase Commissioner Gottlieb, we want to be the off-ramp for adult smokers to switch from cigarettes, not an on-ramp for America's youth to initiate on nicotine. We won't be successful in our mission to serve adult smokers if we don't narrow the on-ramp. . . . Our intent was never to have youth use JUUL products. But intent is not enough, the numbers are what matter, and the numbers tell us underage use of e-cigarette products is a problem. We must solve it." (Statement of Former CEO of JUUL, Ken Burns posted on the JUUL website Nov. 13, 2018);

H.     "We are taking significant action to prepare for a future where adult smokers overwhelmingly choose non-combustible products over cigarettes by investing $12.8 billion in JUUL, a world leader in switching adult smokers. We have long said that providing adult smokers with superior, satisfying products with the potential to reduce harm is the best way to achieve tobacco harm reduction." (Statement of Howard Willard, Altria Chairman and Chief Executive Officer in a Altria Press Release, Dec. 20, 2018);

I.     "First of all, I'd tell them that I'm sorry that their child's using the product. It's not intended for them. I hope there was nothing that we did that made it appealing to them. As a parent of a 16-year-old, I'm sorry for them, and I have empathy for them, in terms of what the challenges they're going through." (JUUL CEO Ken Burns, CNBC Interview, July 13, 2019);

J.     "We never wanted any non-nicotine user, and certainly nobody under the legal age of purchase, to ever use Juul products. . . .That is a serious problem.  Our company has no higher priority than combatting underage use." (, Testimony of JUUL Founder James Monsees Before the House Committee on Oversight and Reform Subcommittee on Economic and Consumer Policy, July 25, 2019);

K.     "We have no higher priority than to prevent youth usage of our products which is why we have taken aggressive, industry leading actions to combat youth usage." (JUUL statement in response to lawsuits, Aug. 13, 2019);

L.     James Monsees, one of the company's co-founders, said selling JUUL products to youth was "antithetical to the company's mission." (Quoted in New York Times article, *Did JUUL Lure Teenagers and Get 'Customers for Life'?*, Aug. 27, 2018);

M.     "Our focus is and will remain entirely on helping adult smokers switch away from combustible cigarettes, the leading cause of preventable death in the world." (Joshual Raffel quoted in New York Times article, *Philip Morris and Altria Are in Talks to Merge*,August 27, 2019);

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

N.    "We have never marketed to youth and we never will." (JUUL statement quoted in Los Angeles Times article, *Studies show how Juul exploited social media to get teens to start vaping*, Sep. 24, 2019)

177.    The mail and wire transmissions described herein were made in furtherance of Defendants' scheme and common course of conduct designed to cover-up JUUL's marketing to youth, thereby increasing or maintaining JUUL's market share, resulting in corresponding high profits for all Defendants.

178.    Many of the precise dates of the fraudulent uses of the U.S. mail and interstate wire facilities have been deliberately hidden and cannot be alleged without access to Defendants' books and records. However, Plaintiff has described the types of predicate acts of mail and/or wire fraud, including the specific types of fraudulent statements upon which, through the mail and wires, the JUUL Enterprise engaged in fraudulent activity in furtherance of its scheme.

179.    The members of the Enterprise have not undertaken the practices described herein in isolation, but as part of a common scheme and conspiracy. In violation of 18 U.S.C. § 1962(d), the members of the JUUL Enterprise conspired to violate 18 U.S.C. § 1962(c), as described herein. Various other persons, firms, and corporations, including third-party entities and individuals not named as defendants in this Complaint, have participated as co-conspirators with Defendants and the members of the JUUL Enterprise in these offenses and have performed acts in furtherance of the conspiracy to increase or maintain revenue, maintain or increase market share, and/or minimize losses for the Defendants and their named and unnamed co-conspirators throughout the illegal scheme and common course of conduct.

180.    The members of the JUUL Enterprise aided and abetted others in the violations of the above laws.

CLASS ACTION COMPLAINT
JURY TRIAL DEMANDED
() - 69

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

181.    To achieve their common goals, the members of the Enterprise hid from Plaintiff and the public: (1) the fraudulent nature of the JUUL Enterprises scheme; (2) the fraudulent nature of statements made by the JUUL Defendant regarding its efforts to target youth and the nature of its product; and (4) the true nature and objective of the relationship between the members of the Enterprise.

182.    Each member of the JUUL Enterprise, with knowledge and intent, agreed to the overall objectives of the schemes and participated in the common course of conduct. Indeed, for the conspiracy to succeed, each of the member of the JUUL Enterprise had to agree to conceal their fraudulent scheme.

183.    The members of the JUUL Enterprise knew, and intended that, the public would rely on the material misrepresentations and omissions made by them.

184.    As described herein, the members of the JUUL Enterprise engaged in a pattern of related and continuous predicate acts for years. The predicate acts constituted a variety of unlawful activities, each conducted with the common purpose of maintaining JUUL's ill-gotten market share and thereby continuing to receive significant monies and revenues from the public, including youth, based on their misconduct.

185.    The predicate acts also had the same or similar results, participants, victims, and methods of commission.

186.    The predicate acts were related and not isolated events.

187.    Defendants' fraudulent concealment was material to Plaintiff and the public. The pattern of racketeering activity described above is currently ongoing and open-ended, and threatens to continue indefinitely unless this Court enjoins the racketeering activity.

CLASS ACTION COMPLAINT
JURY TRIAL DEMANDED
() - 70

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1

**D.    Plaintiff Has Been Damaged by Defendants' RICO Violations**

2

3       188.    Plaintiff has been injured by Defendants' predicate acts. The repeated

4    misstatements by the Defendants denying that JUUL marketed to youth and addicted children to

5    nicotine serve to preserve JUUL's market share—a market share that is based upon children

6    purchasing JUUL's tobacco products. The creation and maintenance of this youth e-cigarette

7    market directly harms Plaintiff by imposing costs on its business and property. These costs

8    include: increased costs associated with curriculum development and class time, increased

9    security staff time spent addressing discipline and supervision issues, and increased counselor

10   time spent speaking to addicted students and peers who are concerned about this epidemic:

11        •    As JUUL use has expanded, the school has had to develop new curriculum

12   material and devote class time to discuss youth vaping with students in health class.

13        •    Security staff has also had to spend increased time addressing student JUUL use.

14   Due to the pervasive use of JUUL products in bathrooms described above, both

15   administrators and security officers now have to spend more time physically supervising

16   students in the bathroom to ensure they are not using JUUL products.

17        •    Security and administrative staff are also spending significantly more time

18   addressing discipline problems related to JUUL use.

19        •    Counselors and prevention specialists at Plaintiff are also affected, having to

20   spend time discussing JUUL use with students and trying to help students who have

21   become addicted. Students are now beginning to tell counselors that they are concerned

22   about their peers using JUUL and are afraid because the students do not know what they

23   are putting in their bodies.

24

25

26

CLASS ACTION COMPLAINT
JURY TRIAL DEMANDED
() - 71

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

• JUUL use is an issue in both the La Conner Middle School and the La Conner High School. Recently, many middle school students are asking high school students to purchase JUUL products for them before Washington's new law raising the vaping age to 21 takes effect on January 1, 2020.

• In response to the effects of JUUL's marketing to minors, La Conner School District has also had expend resources on education efforts. It has had to host multiple town halls and meetings to discuss JUUL use. The District held three town hall forums with in the past year in part to discuss the youth vaping epidemic, including one in May and another September of 2019.

189.   Defendants' violations of 18 U.S.C. § 1962(c) and (d) have directly and proximately caused injuries and damages to Maricopa County, its community, and the public, and the County is entitled to bring this action for three times its actual damages, as well as injunctive/equitable relief, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1.   Certifying this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the proposed Nationwide Class and Washington Sub-Class;

2.   Entering an Order that the conduct alleged herein constitutes a public nuisance under Washington law, including RCW 7.48 *et seq.*;

3.   Entering an Order that the Defendants are jointly and severally liable;

4.   Entering an Order requiring the Defendants to abate the public nuisance described herein and to deter and/or prevent the resumption of such nuisance;

CLASS ACTION COMPLAINT
JURY TRIAL DEMANDED
() - 72

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

5.      Enjoining Defendants from engaging in further actions causing or contributing to the public nuisance as described herein;

6.      Awarding equitable relief to fund prevention education and addiction treatment;

7.      Awarding actual and compensatory damages;

8.      Awarding statutory damages in the maximum amount permitted by law;

9.      Awarding reasonable attorneys' fees and costs of suit;

10.     Awarding pre-judgment and post-judgment interest; and

11.     Such other and further relief as the Court deems just and proper under the circumstances.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

//

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

RESPECTFULLY SUBMITTED this 7th day of October, 2019.

KELLER ROHRBACK L.L.P.


By  */s/ Derek W. Loeser*
    Derek W. Loeser, WSBA #24274

    */s/ Gretchen Freeman Cappio*
    Gretchen Freeman Cappio, WSBA #29576

    */s/ Dean Kawamoto*
    Dean Kawamoto, WSBA #43850

    */s/ Alison S. Gaffney*
    Alison S. Gaffney, WSBA #45565

    */s/ Felicia J. Craick*
    Felicia J. Craick, WSBA #54505

    1201 Third Avenue, Suite 3200
    Seattle, WA 98101
    Tel: (206) 623-1900
    Fax: (206) 623-3384
    Email: dloeser@kellerrorhback.com
           gcappio@kellerrohback.com
           dkawamoto@kellerrohback.com
           agaffney@kellerrohback.com
           fcraick@kellerrohback.com

    ***Attorneys for Plaintiff La Conner School
    District***